# United States Court of Appeals
## For the First Circuit

No. 06-2656

UNITED STATES OF AMERICA,

Appellee,

v.

YONATHAN RODRÍGUEZ,

T/N CARLOS RAMÍREZ OGANDA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Selya, Senior Circuit Judge.

Vivianne M. Marrero-Torres, Assistant Federal Public Defender, with whom Joseph C. Laws, Jr., Federal Public Defender, and Héctor L. Ramos-Vega, Assistant Federal Public Defender, were on brief, for appellant.
Myriam Y. Fernández González, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, and Thomas K. Klumper, Assistant United States Attorney, were on brief, for appellee.

June 4, 2008

**SELYA**, **Senior Circuit Judge**.    In United States v. Andújar-Arias, 507 F.3d 734 (1st Cir. 2007), a panel of this court held that sentencing disparity attributable to the selective inauguration of so-called "fast-track" programs for the processing of immigration crimes could not form the basis for a variant sentence.    Id. at 739.    This appeal requires us to gauge the continued validity of Andújar-Arias in light of the Supreme Court's subsequent decisions in Gall v. United States, 128 S. Ct. 586 (2007), and Kimbrough v. United States, 128 S. Ct. 558 (2007).

After careful evaluation of the effect of those decisions on a sentencing court's discretion, we conclude that they undermine the interpretive approach followed in a number of earlier cases in this and other circuits, including Andújar-Arias.    In fidelity to the Supreme Court's new gloss, we abrogate Andújar-Arias to the extent that it is inconsistent with this opinion, vacate the sentence appealed from, and remand for resentencing.

## I.    BACKGROUND

We rehearse here only those facts that are necessary to place this appeal in perspective.    On April 21, 2006, local authorities arrested defendant-appellant Yonathan Rodríguez as he tried to enter the United States without inspection.    Shortly thereafter, a federal grand jury sitting in the District of Puerto Rico charged him with attempting illegally to reenter the country

after having been removed following a felony conviction. See 8 U.S.C. § 1326(a), (b)(1).

In due course, the appellant pleaded guilty to the sole count of the indictment. The presentence investigation report (PSI Report) recorded his base offense level at 8, applied a sixteen-level enhancement for a prior "crime of violence" felony conviction, USSG §2L1.2(b)(1)(A), and recommended a three-level reduction for acceptance of responsibility, id. §3E1.1. The appellant had three prior convictions, placing him in criminal history category (CHC) IV. Assuming an adjusted offense level of 21 and a CHC of IV, the guideline sentencing range (GSR) would have spanned 57-71 months.

The appellant objected to the PSI Report, asserting that his CHC overrepresented the gravity of his prior offenses. See id. § 4A1.3(b)(1). He also advanced two arguments in favor of a variant (i.e., non-guideline) sentence: first, that the nature and circumstances of his prior crime of violence conviction (for assaulting a federal officer some six years earlier) did not warrant a sixteen-level enhancement; and second, that the absence of an early disposition program for immigration offenses in the District of Puerto Rico created an unacceptable disparity. Importantly, he premised this last request for a variant sentence not only on 18 U.S.C. § 3553(a)(6), but also on section 3553(a)'s overarching provision and sentencing goals.

This argument requires a few words of explanation. Early disposition programs, also known as fast-track programs, date back to the mid-1990s. They popped up spontaneously in federal district courts along the border between the United States and Mexico as part of an effort to manage burgeoning immigration caseloads. See, e.g., United States v. Marcial-Santiago, 447 F.3d 715, 718 (9th Cir. 2006). Typically, prosecutors would use charge-bargaining or plea-bargaining techniques to hold out the prospect of shorter sentences in return for prompt guilty pleas and waivers of appellate rights. See id.

Congress placed its imprimatur on this paradigm in 2003, authorizing the Attorney General to create early disposition programs on a district-by-district basis throughout the country and directing the Sentencing Commission to promulgate a policy statement allowing downward departures in affected cases. See Prosecutorial Remedies and Other Tools To End the Exploitation of Children Today (PROTECT) Act, Pub. L. No. 108-21, § 401(m)(2)(B), 117 Stat. 650, 675 (2003).

Following the passage of the PROTECT Act, the Attorney General established fast-track programs in a handful of judicial districts. The District of Puerto Rico was not among them.

Seizing upon this selectivity, the appellant argued below that the absence of an early disposition program in the District of Puerto Rico resulted in an unwarranted sentencing disparity. He

embellished this argument with a claim that, in some districts that lacked formal fast-track programs, prosecutors engaged in rogue charge-bargaining practices for immigration offenses, generating similar disparities. Given this predicate, the appellant posited, among other things, that sentencing him within the GSR would be inconsistent with the overall thrust of 18 U.S.C. § 3553(a). In particular, he asserted that a guidelines sentence would corrode "respect for the law" and result in a sentence that is "greater than necessary to comply with the purposes" of sentencing. Id. § 3553(a)(2)(A).

The district court agreed that the appellant's CHC overrepresented the seriousness of his past crimes and departed downward to a reduced CHC of III. United States v. Rodríguez, No. 06-1057, 2006 WL 3020040, at *1 (D.P.R. Oct. 19, 2006). This, in turn, shrank the GSR to 46-57 months. Id. But the court refused to grant a sentence below the reconfigured GSR.

The court's reasons were twofold. First, it analyzed the record of the appellant's assault conviction and found that the assault was sufficiently serious to justify the recommended sixteen-level enhancement. Id. Second, it anticipated Andújar-Arias (not yet decided) and refused to inquire into the existence of a fast-track disparity. It indicated that it had no authority to "disregard the advisory guideline sentencing range on this ground." Id. To that end, it referred to case law holding that

such a disparity was not "unwarranted" within the meaning of 18 U.S.C. § 3553(a)(6) and stated that, in any event, the absence of a fast-track program in a particular district was "a battle that must be fought with the Attorney General, and not in the courts." Id.

The court proceeded to impose a 46-month incarcerative sentence — a sentence at the bottom of the reconfigured GSR. This timely appeal ensued.

## II.  ANALYSIS

Before us, the appellant mounts both procedural and substantive challenges to his sentence. Procedurally, he alleges that the district court erred in concluding that a sentencing disparity attributable to the absence of a fast-track program in the District of Puerto Rico could not constitute a permissible factor in the complex of factors upon which a variant sentence might be premised. Substantively, he alleges that his sentence is unreasonable.

Given a properly calculated GSR,[1] we review a sentence for abuse of discretion. Gall, 128 S. Ct. at 591; United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). In this endeavor, we first probe for procedural error, including the sentencing court's

---

[1]In this venue, the appellant does not press any challenge to the construction of the GSR per se. His attack on the sixteen-level enhancement is limited to that enhancement's effect on the substantive reasonableness of his sentence.

refusal to consider factors falling within the purview of 18 U.S.C. § 3553(a). Gall, 128 S. Ct. at 597; Martin, 520 F.3d at 92. If a sentence is procedurally sound, we then proceed to assess its substantive reasonableness. Gall, 128 S. Ct. at 597; Martin, 520 F.3d at 92.

In reviewing the appellant's claim of procedural error, we do not write on a pristine page; a panel of this court heretofore has held that disparity resulting from the selective placement of fast-track programs is not "unwarranted" within the meaning of section 3553(a)(6) and that, therefore, any such disparity "may not be considered by a district judge in sentencing as a basis for a variance from a Guidelines sentence." Andújar-Arias, 507 F.3d at 739. The panel reasoned that by authorizing the institution of fast-track programs in the PROTECT Act, Congress gave implicit sanction to any disparity that might arise from the institution of such programs in some districts but not in others. Id. at 741-42.

As a general rule, newly constituted panels in a multi-panel circuit are bound by prior panel decisions closely on point. See Eulitt ex rel. Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 349 (1st Cir. 2004); United States v. Rodríguez, 311 F.3d 435, 438-39 (1st Cir. 2002). This law of the circuit doctrine is a corollary of the principle of stare decisis. It preserves and protects the judiciary's commitment to finality, stability, and certainty in the

-7-

law.  But the law of the circuit doctrine has soft edges; it is "neither a straightjacket nor an immutable rule."  Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136, 142 (1st Cir. 2000).

In this spirit, courts have recognized that the doctrine admits of exceptions.  The most obvious exception applies when the holding of a previous panel is contradicted by controlling authority, subsequently announced (say, a decision of the authoring court en banc, a Supreme Court opinion directly on point, or a legislative overruling).  See Eulitt, 386 F.3d at 349; Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995).  A second, less obvious exception, comes into play in "those relatively rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind."  Williams, 45 F.3d at 592.  The situation here possesses elements of both of these exceptions.

Shortly after this court decided Andújar-Arias, the Supreme Court decided Gall and Kimbrough.  These decisions, announced on the same day, shed new light on the scope of a sentencing court's discretion under an advisory guidelines regime.  Collectively, they called into question a number of our earlier decisions by emphasizing the breadth of a district court's

discretion to deviate from a defendant's GSR based on the compendium of sentencing factors mentioned in 18 U.S.C. § 3553(a). See Gall, 128 S. Ct. at 596-97; Kimbrough, 128 S. Ct. at 570, 575-76. Concerned that this new jurisprudence might animate an exception to the law of the circuit doctrine and undermine the rationale for excluding any consideration of fast-track disparity, we asked the parties for supplemental briefs. After painstaking study, we are now persuaded that the gloss added by the Supreme Court militates in favor of a new approach — an approach that requires, inter alia, abrogating our holding in Andújar-Arias. We elaborate below.

In Gall, the Court affirmed the imposition of a probationary sentence that represented a "100% downward variance" from the bottom of the applicable GSR. 128 S. Ct. at 594. In so ruling, the Justices expounded further on a district court's authority to vary from the guidelines, emphasizing that district courts have wide latitude in making individualized sentencing determinations. Id. at 594-98. Given Kimbrough's particular pertinence to the inquiry at hand, we take some pains to delineate the contours of the case.

In the mid-1980s, Congress enacted a statute that, for certain sentencing purposes, "treated every gram of crack cocaine as the equivalent of 100 grams of powder cocaine." Id. at 567; see Anti-Drug Abuse Act of 1986, 100 Stat. 3207, 3207-2, -3 (codified

in 21 U.S.C. § 841(b)(1)).  Following Congress's lead, the Sentencing Commission incorporated this 100-to-1 weight-driven ratio into the sentencing guidelines.  See USSG §2D1.1(c) (2006); see also Kimbrough, 128 S. Ct. at 567.[2]  As a result, crack cocaine offenses yielded sentences "three to six times longer than those for powder [cocaine] offenses involving equal amount of drugs."  Kimbrough, 128 S. Ct. at 566.

Virtually from the start, this sentencing scheme drew heavy fire for, among other things, resting on unfounded assumptions about the harmfulness of crack relative to powder cocaine.  The Sentencing Commission itself concluded that the disparity created by the 100-to-1 ratio was unwarranted.  United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy 91 (May 2002).  In 1995, it proposed amendments to the sentencing guidelines to replace the 100-to-1 ratio with a 1-to-1 ratio.  Kimbrough, 128 S. Ct. at 569.  But Congress rejected this proffer and has shown no enthusiasm for subsequent ameliorative proposals.

Against this backdrop, a jury convicted Kimbrough on various counts related to the possession and distribution of crack

---

[2]In 2007, the Sentencing Commission took a small step toward ameliorating the crack/powder disparity, unilaterally reducing by two the base offense level associated with each quantity of crack cocaine.  See United States Sentencing Commission, Sentencing Guidelines for United States Courts, 72 Fed. Reg. 28558, 28571-72 (2007); see also Kimbrough, 128 S. Ct. at 569.

cocaine. At sentencing, the judge commented upon "the disproportionate and unjust effect that crack cocaine guidelines have in sentencing" and concluded that a sentence within the GSR would be "greater than necessary" to accomplish the objectives set out in 18 U.S.C. § 3553(a). Id. at 565. The judge determined that a below-the-range sentence was "clearly long enough" to achieve those objectives. Id.

The Fourth Circuit vacated the sentence. It took the position that a sentence outside the guideline range was per se unreasonable when premised on a disagreement with the stipulated crack/powder ratio. United States v. Kimbrough, 174 Fed. Appx. 798, 799 (4th Cir. 2006).

On certiorari review, the question was whether a sentencing court could ground a variant sentence based on its disagreement, as a matter of sentencing policy, with the 100-to-1 crack/powder ratio. The Supreme Court answered this query affirmatively, holding that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes." Kimbrough, 128 S. Ct. at 575. Speaking more broadly, the Court indicated that, "as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." Id. at 570 (internal quotation

-11-

marks omitted).  In making this pronouncement, the Court rejected the government's contention that Congress had made the lopsided ratio mandatory and "decline[d] to read any implicit directive into . . . congressional silence."  Id. at 571.

Having in mind the Court's new approach, we turn to the case at hand.  In the first instance, this requires that we mull the continued vitality of Andújar-Arias.  Of course, that decision is, strictly speaking, limited to the question of whether fast-track disparity can be considered by a sentencing court under 18 U.S.C. § 3553(a)(6).  See Andújar-Arias, 507 F.3d at 738-39.  But the appellant in this case has cast a wider net; he argues not only for consideration of that datum under section 3553(a)(6) but also for its consideration as part of the broader constellation of factors covered by section 3553(a).  Because Andújar-Arias can fairly be interpreted as establishing a bright-line rule, we disregard semantics and treat the decision in Andújar-Arias as standing in the way of the appellant's argument.

Several considerations lead us to conclude that, when viewed through the prism of Kimbrough, the appellant's argument has merit.  Although Kimbrough involved the crack/powder ratio, its approach plainly has wider implications arguably affecting a number of our earlier cases, including but not limited to, how we have treated disparities arising out of the selective institution of fast-track programs.  As to those programs — other cases not now

-12-

before us are better left for another day — the analogy is compelling.[3]

Like the crack/powder ratio, fast-track departure authority has been both blessed by Congress and openly criticized by the Sentencing Commission. See United States Sentencing Commission, Report to the Congress: Downward Departures from the Federal Sentencing Guidelines 66-67 (2003) (criticizing fast-track programs for creating a "type of geographical disparity"). Like the crack/powder ratio, the fast-track departure scheme does not "exemplify the [Sentencing] Commission's exercise of its characteristic institutional role." Kimbrough, 128 S. Ct. at 575. In other words, the Commission has "not take[n] account of empirical data and national experience" in formulating them. Id. (citations omitted). Thus, guidelines and policy statements embodying these judgments deserve less deference than the sentencing guidelines normally attract. See id.

Given this pedigree, a sentence that is partially the product of a fast-track departure might or might not "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Rita v. United States, 127 S. Ct. 2456, 2465 (2007).

---

[3]Even before the advent of Kimbrough, several courts recognized a substantial degree of doctrinal affinity between variant sentences involving the crack/powder ratio and those involving fast-track programs. See, e.g., United States v. Vargas, 477 F.3d 94, 100 (3d Cir. 2007); United States v. Spears, 469 F.3d 1166, 1181 (8th Cir. 2006).

If raised, the sentencing court will have to answer this question in a particular case. And where that answer is favorable to the defendant, a variant sentence premised on perceived inequities attributable to the availability elsewhere of fast-track departures would, given the Supreme Court's new gloss, seem to be entitled to deference "even in a mine-run case." Kimbrough, 128 S. Ct. at 575.

Beyond these parallels between the crack/powder ratio and the authorization for the selective institution of fast-track programs, emergent case law signals that, under an advisory guideline regime, sentencing has become a steadily more open-ended enterprise. See, e.g., Gall, 128 S. Ct. at 597 (discussing a sentencing court's superior coign of vantage "to find facts and judge their import under § 3553(a)"). Recent decisions of this court have noted this reality. See, e.g., Martin, 520 F.3d at 92; United States v. Vega-Santiago, 519 F.3d 1, 4 (1st Cir. 2008) (en banc).

Building on the foundation laid in United States v. Booker, 543 U.S. 220 (2005), Kimbrough lends a new flexibility to the scope of the district courts' sentencing authority and, in the bargain, removes a formidable obstacle to the consideration of matters such as fast-track disparity. We refer specifically to the Kimbrough Court's enlargement of a sentencing court's capacity to factor into the sentencing calculus its policy disagreements with the guidelines. Kimbrough, 128 S. Ct. at 570. This makes plain

-14-

that a sentencing court can deviate from the guidelines based on general policy considerations.  Id.  In so ruling, the Court effectively displaced our holding in United States v. Pho, 433 F.3d 53, 62 (1st Cir. 2006), in which we had held that district courts could not base sentencing decisions "on general, across-the-board" policy disagreements with a guideline provision or policy statement (there, the crack/powder ratio).

Importantly, Kimbrough counsels a new and different approach to section 3553(a).  Andújar-Arias illustrates this point. There, as in some other pre-Kimbrough cases, the court evaluated only the isthmian question of whether a particular item (there, fast-track disparity) could be considered under the aegis of a specific provision of section 3553(a) (there, section 3553(a)(6)). See Andújar-Arias, 507 F.3d at 736.  But as we explain below, the Kimbrough Court's organic reading of section 3553(a) suggests that a sentencing judge should engage in a more holistic inquiry.

The Court emphasized that section 3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle.  See Kimbrough, 128 S. Ct. at 570.  That tenet (sometimes referred to as the "parsimony principle") instructs "district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." Id. (quoting 18 U.S.C. § 3553(a)).  This overarching principle

-15-

necessarily informs a sentencing court's consideration of the entire constellation of section 3553(a) factors, including the need to avoid unwarranted disparity. Similarly, judicial interpretation of section 3553(a) should be guided by the broadly worded "goals of sentencing" spelled out in section 3553(a)(2), to which Kimbrough pays homage. Id.

In the final analysis, then, the gloss supplied by Kimbrough signifies that a district court should not evaluate a request for a variant sentence piecemeal, examining each section 3553(a) factor in isolation, but should instead consider all the relevant factors as a group and strive to construct a sentence that is minimally sufficient to achieve the broad goals of sentencing. This inquiry should be guided by, but not made unflinchingly subservient to, the concerns expressed in the statute's various sub-parts.

Seen in light of the Supreme Court's neoteric teachings, a narrow focus on a particular factor in isolation, such as a single-minded fixation on whether fast-track disparity can fit within the confines of section 3553(a)(6), seems too cramped. After all, each sub-part enumerates "only one of several factors that must be weighed and balanced by the sentencing judge." United States v. Fernandez, 443 F.3d 19, 32 (2d Cir. 2006). So, whether or not the disparity of which the appellant complains is the type of disparity to which section 3553(a)(6) is addressed, Kimbrough, properly

applied, teaches that a sentencing court should not rebuff such a complaint out of hand.

That does not mean that the court should swallow such an allegation hook, line, and sinker, nor does it mean that it is foreclosed from determining that any disparity, when viewed through the prism of section 3553(a), is insufficient to warrant a non-guideline sentence. It does mean, however, that when confronted with an allegation of fast-track disparity, the court should at that point undertake a further inquiry. For example, it should probe whether and to what extent a relevant disparity exists at all and then, if it finds one, engage in a comprehensive evaluation of whether this and other items in the constellation of section 3553(a) factors, viewed as a whole, cast doubt on the suitability of a within-the-range sentence. In the course of this assessment, the court would have to ask whether such a sentence, if imposed, would encourage "respect for the law," 18 U.S.C. § 3553(a)(2)(A); "provide just punishment for the offense," id.; and "afford adequate," but not excessive, deterrence, id. § 3553(a)(2)(B). Ultimately, the court (depending on how it views the case) could ground a variant sentence in the parsimony principle rather than in section 3553(a)(6) alone. See Kimbrough, 128 S. Ct. at 575; see also Vega-Santiago, 519 F.3d at 4 (recognizing, post-Kimbrough, that a variant sentence may be constructed "based on a complex of factors whose interplay and precise weight cannot even be precisely described");

-17-

United States v. Verkhoglyad, 516 F.3d 122, 131 (2d Cir. 2008) (stating, post-Kimbrough, that no particular 3553(a) sentencing factor should be given "determinative or dispositive weight") (quoting Fernandez, 443 F.3d at 32).

This result is consistent with our post-Kimbrough case law suggesting that even if a specific sentencing rationale cannot be considered under the aegis of a particular sub-part of section 3553(a), such a proscription does not bar consideration of that factor in the course of a more holistic review of the full panoply of section 3553(a) factors. See, e.g., Martin, 520 F.3d at 94 (indicating that section 3553(a)(6)'s instruction to consider "unwarranted sentencing disparities" was not intended to encompass disparate coconspirator sentences but that such disparities nonetheless could be considered under the totality of the section 3553(a) sub-parts).

For these reasons, we conclude that consideration of fast-track disparity is not categorically barred as a sentence-evaluating datum within the overall ambit of 18 U.S.C. § 3553(a). To the extent necessary to effectuate this holding, we abrogate our earlier opinion in Andújar-Arias.

The government labors mightily to stave off this holding. Its most loudly bruited claim is that, in contradistinction to the legislative actions at issue in Kimbrough, the PROTECT Act contains an unequivocal congressional mandate that bans consideration of any

disparity arising from the selective implementation of fast-track programs. This argument finds support in the Fifth Circuit's recent opinion in United States v. Gomez-Herrera, ___ F.3d ___ (5th Cir. 2008) [2008 WL 886091], in which the court, on materially identical facts, determined that Kimbrough did not alter prior case law restricting a sentencing court's authority to include fast-track disparity in the sentencing mix. Id. at ___ [2008 WL 886091, at *2-8].

We reject the government's importunings and in the process, respectfully disagree with the conclusion reached by the Gomez-Herrera panel. While the Kimbrough Court acknowledged that a sentencing court can be constrained by express congressional directives, such as statutory mandatory maximum and minimum prison terms, 128 S. Ct. at 571-72, the PROTECT Act — as the Fifth Circuit would have to concede — contains no such express imperative. The Act, by its terms, neither forbids nor discourages the use of a particular sentencing rationale, and it says nothing about a district court's discretion to deviate from the guidelines based on fast-track disparity. The statute simply authorizes the Sentencing Commission to issue a policy statement and, in the wake of Kimbrough, such a directive, whether or not suggestive, is "not decisive as to what may constitute a permissible ground for a variant sentence." Martin, 520 F.3d at 93.

By the same token, the PROTECT Act's authorization for the selective deployment of fast-track programs bears scant resemblance to a congressional directive instituting statutory minimum and maximum sentences. Although the latter directive necessarily cabins a sentencing court's discretion, the former authorization says nothing about the court's capacity to craft a variant sentence within the maximum and minimum limits.

Refined to bare essence, the government is urging us to read into the PROTECT Act an implicit restriction on a district court's sentencing discretion. But that can be done, as Gomez-Herrera illustrates, only by heavy reliance on inference and implication about congressional intent — a practice that runs directly contrary to the Court's newly glossed approach. See Kimbrough, 128 S. Ct. at 570-74 (declining, despite Congress's implicit acquiescence in, or even its endorsement of, the 100-to-1 crack/powder ratio, to treat that ratio as beyond the reach of section 3553(a)). In refusing to read a bar on policy disagreements into either Congress's original formulation of the 100-to-1 crack/powder ratio in the Anti-Drug Abuse Act or its later rejection of the Sentencing Commission's attempted softening of the ratio, id. at 570-73, Kimbrough made pellucid that when Congress exercises its power to bar district courts from using a particular sentencing rationale, it does so by the use of unequivocal terminology.

Our decision in Martin hammers home this point. There, the district court deviated dramatically downward from the GSR applicable to a career criminal and sentenced him within the range that would have obtained had he not been a recidivist. Martin, 520 F. 3d at 96. The government appealed, arguing that the variance was insupportable because Congress had indicated its desire "that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" for recidivist offenders. 28 U.S.C. § 994(h). We rejected the argument, concluding that Kimbrough had opened the door for sentencing courts to deviate from the guidelines in individual cases notwithstanding Congress's competing policy pronouncements. Martin, 520 F.3d at 96.

Another example of this phenomenon is our recent decision in United States v. Politano, 522 F.3d 69 (1st Cir. 2008). In that post-Kimbrough case, we concluded that community characteristics could be factored into the sentencing calculus, notwithstanding Congress's and the Sentencing Commission's expressed policy preferences to the contrary. Id. at 73-74. In so holding, we jettisoned a pre-Kimbrough decision of this court. See id. at 73 (effectively overriding United States v. Aguilar-Pena, 887 F.2d 347, 352 (1st Cir. 1989)).

If these holdings are to be given more than mere lip service, they must mean that absent an unambiguous congressional directive barring sentencing courts from considering disparity

created by the district-by-district implementation of fast-track programs, a sentencing court can include that datum in its sentencing calculus, as long as the court grounds its rationale in the complex of factors enumerated in 18 U.S.C. § 3553(a).

In a last-ditch effort to persuade us to bar consideration of fast-track disparity, the government thunders that upholding variant sentences premised in whole or in part on this ground will be tantamount to "a judicial attempt to exercise prosecutorial discretion" — an action that supposedly would impinge upon Executive Branch authority and, thus, violate separation-of-powers principles. This tirade elevates hope over reason.

While the decision to institute a fast-track program in a particular judicial district is the Attorney General's, the ultimate authority to grant a fast-track departure lies with the sentencing court. See USSG §5K3.1. The appellant is not requesting that this court direct prosecutors to institute a fast-track program in the District of Puerto Rico or to offer him a fast-track plea. Rather, the appellant asks that we gauge the impact of disparate sentencing practices in crafting his sentence. Because this is an unquestionably judicial function, we discern no separation of powers concerns here.

Finally, the government argues that even if fast-track disparity ordinarily can be considered in sentencing, the appellant is outside the universe of defendants who might be advantaged by

such a proposition.  This is so, the government asseverates, inasmuch as the appellant is not similarly situated to other defendants charged with immigration crimes; after all, he filed pretrial motions and did not waive his right to appeal.  But the government is trying to have it both ways.  Lacking the benefit of the bargain inherent in fast-track programs, a defendant cannot be expected to renounce his right to mount a defense.[4]  Cf. United States v. Tierney, 760 F.2d 382, 388 (1st Cir. 1985) ("Having one's cake and eating it, too, is not in fashion in this circuit.").

## III.  CONCLUSION

We conclude that the district court, acting without the benefit of the watershed decision in Kimbrough, committed procedural error in refusing to consider the appellant's argument that he should receive a variant sentence because of the disparity incident to the lack of a fast-track program in the District of Puerto Rico. Kimbrough makes manifest that sentencing courts possess sufficient discretion under section 3553(a) to consider requests for variant sentences premised on disagreements with the manner in which the sentencing guidelines operate.

---

[4]The government also claims that the appellant's prior felony convictions might disqualify him from the fast-track program in some districts.  See, e.g., United States v. Duran, 399 F. Supp. 2d 543, 547 (S.D.N.Y. 2005).  But this goes to the substance of the appellant's argument — a matter that the district court did not reach.  In all events, the criteria for fast-track programs vary from district to district, and the government has not suggested that the appellant would be categorically foreclosed from receiving fast-track benefits.

We add a note of caution.  Our holding today is carefully circumscribed; although sentencing courts can consider items such as fast-track disparity, they are not obligated to deviate from the guidelines based on those items.  Cf. Martin, 520 F.3d at 91 (explaining that the mere "fact that a sentencing court possesses the raw power to deviate from the guidelines does not mean that it can (or should) do so casually").  By the same token, the district court can make its own independent determination as to whether or not a sentence tainted by the alleged disparity is nonetheless consistent with the centrifugal pull of the constellation of 3553(a) factors.

We need go no further.  For the reasons elucidated above, we vacate the appellant's sentence and remand for resentencing consistent with this opinion.[5]  In so doing, we take no view anent the sentence that should be imposed here — which, conceivably, could be higher, lower, or the same as the sentence appealed from.  In the first instance, the length of the term is up to the district court, which must formulate a plausible sentencing rationale and reach a defensible result.  See id.; United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc).

**Vacated and remanded.**

_____

[5]Because we vacate the sentence and remand for re-sentencing, we need not reach any of the appellant's alternative arguments.