# United States Court of Appeals
## For the First Circuit

No. 19-2012

UNITED STATES OF AMERICA,

Appellee,

v.

BLAKE FIELDS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Thompson and Kayatta, Circuit Judges.[*]

Max D. Stern, with whom Michael R. DiStefano and Todd & Weld, LLP were on brief, for appellant.
Jennifer H. Zacks, Assistant United States Attorney, with whom Andrew E. Lelling, United States Attorney, was on brief, for appellee.

---

[*] Judge Torruella heard oral argument in this matter and participated in the semble, but he did not participate in the issuance of the panel's opinion in this case. The remaining two panelists therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

September 13, 2021

THOMPSON, **Circuit Judge**. In 2008, a jury convicted Blake Fields of distributing more than five grams of cocaine base, 21 U.S.C. § 841(a)(1), and the district court sentenced Fields to 18 years in prison. In the decade that followed, Congress passed two pieces of legislation relevant to Fields's case, the Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010), and the First Step Act of 2018, Pub. L. No. 115-391, 231 Stat. 5194 (2018). Fields filed a motion in district court seeking a reduction of his sentence, per the terms of those statutes. The district court denied Fields's motion without hearing. Fields appealed to us. Bound by circuit precedent, we affirm.

## The Facts

At the time of sentencing, the district court calculated Fields's guidelines sentencing range to be between 262 and 327 months. This sentencing range was ultimately dictated by the fact that Fields's prior convictions for violent felonies qualified him as a career offender, which yielded a total offense level of 34 and a criminal history category of VI. See U.S.S.G. § 4B1.1 (total offense level of 34 applies to career offender where maximum statutory term of imprisonment is 25 years or more; career offender status equates to category VI). At trial, a government witness testified that the drug distribution took place within 1,000 feet of a school, which doubled the statutory maximum sentence from 40 years to 80 years, per 21 U.S.C. § 860. At the time, Fields did

- 3 -

not contest that the sale took place within a school zone. After hearing from Fields and considering the sentencing factors per 18 U.S.C. § 3553(a), the district court sentenced Fields to 216 months' (18 years) imprisonment.

## The History

In 1986, Congress passed the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207 (the "1986 Act"). Kimbrough v. United States, 552 U.S. 85, 95-96 (2007). Relevant to our discussion, "the 1986 Act adopted a '100-to-1 ratio' that treated every gram of crack cocaine as the equivalent of 100 grams of powder cocaine." Id. at 96.[1] The Sentencing Commission also incorporated the 100-to-1 ratio into the sentencing guidelines, which went into effect the following year. Id. at 96-97 n.7. The 100-to-1 differential led to the imposition of serious sentences "primarily upon black offenders" and gave rise to a widely held perception that the differential "promote[d] unwarranted disparity based on race." Id. at 98.

By the mid-1990s, the Sentencing Commission realized the error of its ways and began proposing changes to the ways the sentencing guidelines treated crack and powder cocaine quantities.

---

[1] This meant that a "five-year mandatory minimum applie[d] to any defendant accountable for 5 grams of crack or 500 grams of powder, 21 U.S.C. § 841(b)(1)(B)(ii), (iii); [and a] ten-year mandatory minimum applie[d] to any defendant accountable for 50 grams of crack or 5,000 grams of powder, § 841(b)(1)(A)(ii), (iii)." Kimbrough, 552 U.S. at 96.

- 4 -

See id. at 97-100 (explaining the Sentencing Commission's criticisms of the 100-to-1 ratio and detailing the Commission's efforts to amend the guidelines and to prompt congressional action on the issue). In 2007, the Sentencing Commission acted on its own and amended the drug sentencing tables in the guidelines to make the crack-to-powder-cocaine ratio less stark. See id. at 99-100.

In 2010, (after Fields's conviction and sentencing in this case) Congress got the message and passed the Fair Sentencing Act which reduced the punishment ratio to 18-to-1 in the relevant criminal statutes. See Fair Sentencing Act, § 2. Congress also instructed the Sentencing Commission to amend the drug quantity tables in the guidelines to reflect that change. The Commission complied and made the changed guidelines retroactive.

These changes helped a lot of defendants have the opportunity for shorter prison sentences, but not all. For example, a defendant who committed a crack cocaine offense and also qualified as a career offender at sentencing (like Fields) was ineligible for relief because the amendments to the guidelines did not change the career offender provisions which ultimately dictated the defendant's guidelines range. See United States v. Caraballo, 552 F.3d 6, 11 (1st Cir. 2008).

In an effort to address more of those cases, Congress passed the First Step Act. Section 404 of the First Step Act

specifically addressed the sections of the Fair Sentencing Act that amended the applicable drug statutes. Section 404 says that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." First Step Act, § 404(b).[2] The First Step Act is also clear that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." Id. § 404(c).

**The District Court's Decision(s)**

Seeing those statutory changes, in 2019, Fields filed a motion in the district court to reduce his sentence. In that motion, Fields argued that, if he were sentenced today, there would be no mandatory minimum for his conviction; the First Step Act lowered the maximum statutory sentence; and the sentencing factors in § 3553(a), especially his post-conviction rehabilitation, would counsel toward a shorter sentence.

Fields also argued that, because of a change in the sentencing guidelines since his conviction, he would not be deemed a career offender if convicted today. That change took place in

_____

[2] For its part, a "'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." First Step Act, § 404(a). All agree that Fields committed a "covered offense."

2016, when, after the Supreme Court held the so-called "residual clause" of the Armed Career Criminal Act to be unconstitutionally vague, Johnson v. United States, 576 U.S. 591 (2015), the Sentencing Commission removed the residual clause from the guidelines' definition of a career offender. See U.S.S.G. App. C, amend. 798 (U.S. Sentencing Comm'n Supp. Nov. 1, 2016); also check this out Beckles v. United States, 137 S. Ct. 886 (2017) (declining to hold that the residual clause of the career offender guideline was unconstitutionally vague). Further, Fields contended, if he were sentenced today, he would contest that the drug sale took place within 1,000 feet of a school. All of these things together, Fields told the court, counseled toward a reduced sentence. The government opposed the motion, arguing that, at the time of sentencing, the district court carefully considered Fields's sentence and determined that an 18-year sentence was appropriate. The government contended that, despite Fields's claim otherwise, his guidelines sentence range would still be the same if he were sentenced today because he would still qualify as a career offender and the maximum statutory sentence would be 40 years because the fact of Fields selling drugs within 1,000 feet of a school would still be a part of the record.

The district court denied Fields's motion in a brief order, explaining that "[t]he First Step Act does not sweep as broadly as is here claimed" and, in support, cited to another

decision, authored by the same district court judge, published the prior day, United States v. Concepcion, No. 07-10197, 2019 WL 4804780 (D. Mass. Oct. 1, 2019).

In that case, the district court considered another First Step Act motion for a reduced sentence. Id. at *1. The district court denied the motion saying that, if Concepcion, the defendant in that case, "came before the [c]ourt today and the [c]ourt considered only the changes in law that the Fair Sentencing Act enacted, his sentence would be the same." Id. at *2. The district court further explained that, at the time of sentencing, it considered the § 3553(a) factors and made an appropriate decision based upon the specific facts of the case, not only the sentencing guidelines. Id.

Concepcion had argued that he would not be considered a career offender now that the guidelines' definition did not include the residual clause. The district court refused to recalculate Concepcion's sentencing guidelines range as if he was not a career offender because the district court believed that considering that change to the guidelines was beyond the scope of the its authority to resentence a defendant under the First Step Act. Overall, the court noted that the original sentence "was fair and just" at the time of sentencing and "remain[ed] so." Id.

## The Relevant Precedent

Like Fields, Concepcion appealed the denial of his motion for a reduced sentence to this court. Another panel of this court issued an opinion in Concepcion's case in March of 2021. United States v. Concepcion, 991 F.3d 279 (1st Cir. 2021). In issuing that decision, a divided panel of this court affirmed the denial of Concepcion's motion and laid out a two-step process by which district courts ought to analyze First Step Act cases.[3] First, the district court answers the question of whether a defendant should be resentenced and then, if the answer is yes, the district court determines what the new sentence should be. Id. at 289.

In step one, the district court "place[s] itself at the time of the original sentencing and keep[s] the then-applicable legal landscape intact, save only for the changes specifically authorized by sections 2 and 3 of the Fair Sentencing Act." Id.[4] "If that determination is in the negative, the inquiry ends and any sentence reduction must be denied." Id. If, however, the

---

[3] As Concepcion makes clear, this process applies only to those who qualify for relief under the First Step Act's provisions. 991 F.3d at 289. All agree that the First Step Act applies to Fields.

[4] This is the core of the disagreement among the Concepcion panel. Judge Barron would hold that the district court would also be "free to consider intervening developments (both factual and legal)" at this stage of the process. Concepcion, 991 F.3d at 310 (Barron, J., dissenting).

district court calculates that the defendant is eligible for a reduced sentence, the district court may consider other factors not among those named in sections 2 and 3 of the Fair Sentencing Act, such as changes in the sentencing guidelines or the § 3553(a) factors. Id. at 289-90. At no point is the district court required to reduce a defendant's sentence.

**The Analysis**

Fields argues that we are free to ignore Concepcion's holding and approach his case with a clean slate (and then decide in his favor). Alternatively, Fields tells us that, even if Concepcion applies to this case's resolution, the district court still erred by not recalculating Fields's sentencing range as if he were not convicted of selling drugs in a school zone. Finally, Fields claims that, no matter our approach to Concepcion, remand is appropriate because the district court made a legal error when it, in Fields's words, determined it had no discretion to reduce Fields's sentence.

*Does* Concepcion *Apply Here?*

We begin with Fields's argument that Concepcion does not govern this case and we are therefore free to ignore its mandates. We review Fields's argument about the proper construction of the First Step Act just as we do any question of statutory interpretation, with fresh eyes and with no deference to the district court's decision.

Generally, we "are bound by prior panel decisions that are closely on point," a concept commonly referred to as the "law of the circuit." United States v. Wurie, 867 F.3d 28, 34 (1st Cir. 2017) (quoting San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010)).[5] There are two, rare exceptions to this rule. First, we may deviate from a prior panel's holding when it is "contradicted by controlling authority, subsequently announced (say, a decision of the authoring court en banc, a Supreme Court opinion directly on point, or a legislative overruling)." San Juan Cable LLC, 612 F.3d at 33 (quoting United States v. Rodríguez, 527 F.3d 221, 225 (1st Cir. 2008)). No such contradicting, controlling decision exists (and Fields does not claim it does). Second, we may chart our own course in the "rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." Id. (quoting Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995)). If such authority were to exist, we doubt that it would persuade the

---

[5] Fields also argues that Concepcion was not technically decided by a "prior panel" of this court because Fields's notice of appeal was filed before Concepcion's and so, to Fields, the panel in this case came to be before the panel in Concepcion. This novel construction is unsupported by our precedent.

majority in Concepcion to change its collective mind a mere six months after issuing this decision.[6]

Fields's primary reason for why we should ignore Concepcion's holding is that the opinion is incorrect. It is not the place of another panel of this court to make that determination and we will not do so here. See Wurie, 867 F.3d at 35.

*Did the District Court Err?*

Moving on, we turn to Fields's argument that even under Concepcion's two-step process, the district court abused its discretion when it did not reduce Fields's sentence. "An abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." Concepcion, 991 F.3d at 292 (quoting United States v. Soto-Beníquez, 356 F.3d 1, 30 (1st Cir. 2003)).

Imputing the district court's reasoning in Concepcion's case, the district court concluded that Fields would receive the same sentence if he "came before the court today and the court

---

6 We do note, as did the panel in Concepcion, that we are not the first court to consider this issue. 991 F.3d at 285-86 (collecting cases from sister circuits who have considered whether a defendant's eligibility for resentencing under the First Step Act entitles him to plenary resentencing). The circuits appear divided as to the appropriate interpretation of the First Step Act.

considered only the changes in law that the Fair Sentencing Act enacted." Applying Concepcion's parlance, the district court made the discretionary determination that Fields did not pass the first step of the assessment, so no resentencing was called for. Fields argues that the district court erred by not recalculating Fields's sentencing range as if he were not convicted of selling drugs within a school zone and as if he were not a career offender.

Fields contends that, if he were sentenced today, he would have contested that he sold cocaine base within 1,000 feet of a school because, if that challenge was successful, it would give him a lower sentencing range under the current guidelines.[7] Therefore, Fields appears to tell us, the district court should have presumed Fields's successful challenge to the school zone augmentation of his sentence and then recalculated his guideline range using today's guidelines. That recalculation, in Fields's eyes, satisfies Concepcion's first step and so, the district court should have moved to the second step and evaluated whether it should modify Fields's sentence. This simply does not align with the clear first step in Concepcion, which solely permits consideration of changes listed by sections 2 and 3 of the Fair

---

[7] Fields argues that the school in question was 1,000 feet from the site of the drug sale "as the crow flies" but could not have been directly reached within 1,000 feet. He claims he did not pursue this argument at sentencing because, even if he prevailed, it would not have altered his sentencing guidelines range at the time.

Sentencing Act and does not authorize the district court to assume different facts from those in place at the time of sentencing when determining if resentencing is appropriate. See id. at 289-90.

The same reasoning applies to Fields's contention that the district court should have recalculated his sentencing guidelines range as if he were not a career offender. Like the hypothetical school zone change, this change is not included in sections 2 and 3 of the Fair Sentencing Act and is therefore not called for in Concepcion's first step.

Accordingly, the district court did not err when it relied on the facts as they were at the time of sentencing, concluded Fields's sentencing guidelines range would be unchanged by the changes in the Fair Sentencing Act, and declined to modify Fields's sentence.

Finally, Fields argues that the district court made an error of law because it misapprehended its own power to modify a sentence under the First Step Act and mistakenly thought that it was forbidden to modify Fields's sentence. Fields hangs his hat on the district court's brief order denying Fields's motion where it said that "[t]he First Step Act does not sweep as broadly as is here claimed." Though the district court's order denying Fields's motion is short, the district court made its reasoning plain in its more thorough analysis of Concepcion's case. This court already affirmed the district court's reasoning there, noting that

"the district court carefully analyzed the First Step Act" and used its discretion to determine whether resentencing was appropriate.  Id. at 292.

## The Conclusion

Seeing no issues left to resolve, we **<u>affirm</u>** the district court's denial of Fields's motion.