# United States Court of Appeals
## For the First Circuit

No. 23-2037

UNITED STATES OF AMERICA,

Appellee,

v.

JERRY OMAR RODRÍGUEZ-REYES, a/k/a Quiri,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Aframe, Circuit Judges.

María S. Ramírez-Becerra for appellant.
Jeniffer Vélez-Pérez, with whom W. Stephen Muldrow, United
States Attorney; Mariana E. Bauzá-Almonte, Assistant United States
Attorney, Chief, Appellate Division; and Thomas F. Klumper,
Assistant United States Attorney, Senior Appellate Counsel, were
on brief, for appellee.

June 10, 2026

**THOMPSON, Circuit Judge**.  Thirteen years after we first upheld Jerry Omar Rodríguez-Reyes's life sentence following jury convictions arising from his leadership in a murderous drug-dealing conspiracy, see United States v. Rodríguez-Reyes (Rodríguez I), 714 F.3d 1, 17 (1st Cir. 2013), he's before us again.  This time, Rodríguez (whose name we shorten based on Spanish naming customs) appeals the district court's denial of his motion to reduce his sentence under the First Step Act.  As we'll explain shortly, we affirm.

## I

It all started more than twenty years ago at La Recta, a section of San Juan's Nemesio R. Canales public housing project.[1] Rodríguez I, 714 F.3d at 4.  Local kingpin Melvin Méndez-Roldán ran the crack cocaine business there, and he "charged a monthly rent to other drug owners who wanted to sell marijuana" at that same spot.  Id. (cleaned up).  And while Méndez (who "regularly patrolled La Recta with firearms" and "frequently used violence, including lethal violence" to maintain control of his fiefdom) was arrested in 2003, he still ran the show from his prison cell for a while.  Id. at 4-5.

---

[1] We set the stage with the facts and history from our first opinion on Rodríguez, which itself draws from a jury verdict we upheld as evidentiarily sufficient.  See Rodríguez I, 714 F.3d at 8.

Enter stage left Rodríguez. In 2004, he began selling marijuana (about a pound every couple of days) throughout La Recta and carrying a gun while he did so. Id. at 5. And after Méndez's arrest, Rodríguez and some fellow dealers sought to protect and even expand their business, largely through violence. Id.

That campaign culminated in two especially disturbing events. First was a drive-by-shooting where Rodríguez (alongside four others) took a stolen SUV and some heavy-duty guns (like AK-47s) to a rival dealer's spot and opened fire -- killing three people. Id. Second was the cold-blooded murder of another drug dealer, Agustín. Id. at 5-6. One day, after a compatriot of Rodríguez (Héctor González-Suárez) greeted Agustín with an embrace, Rodríguez shot Agustín in the back of the head. Id. at 6. Rodríguez and González continued to shoot Agustín once he hit the ground, and he succumbed to the gunshot wounds. Id.

For these acts (and others), Rodríguez was arrested and charged with several crimes. Id. We'll spare the finer procedural details and just say that a jury ultimately convicted him and other dealers (including Méndez and González) of two charges. Id. Count One was conspiracy to possess with intent to distribute both marijuana and over 50 grams of crack cocaine (contra 21 U.S.C. §§ 841 and 860), and Count Two was conspiracy to possess and use (among other verbs) firearms in the furtherance of/during and in

relation to a drug trafficking crime (contra 18 U.S.C. § 924(c)(1)(A) and (o)). See Rodríguez I, 714 F.3d at 6.

Then came the sentencing. In calculating Rodríguez's recommended sentencing range under the United States Sentencing Guidelines (a.k.a "U.S.S.G." or just "the Guidelines"), the district court used the "murder cross-reference" guideline (found at U.S.S.G. § 2D1.1(d)(1)) to determine that the base offense level for Count One was 43.[2] See Rodríguez I, 714 F.3d at 15. Two enhancements (for leadership and using a minor in the commission of the offense) pushed the offense level to 47 -- literally off the sentencing grid -- but it was ultimately treated as 43 anyway, because that (combined with his criminal history category of I) already provided a recommended sentence of life imprisonment. Id. at 15. And the court followed the Guidelines' lead, because it gave Rodríguez a life sentence for Count One and another ten years to be served consecutively for Count Two. Id. at 4, 16.

---

[2] As we explained in Rodríguez I, 714 F.3d at 6:

> This cross-reference provides that, for a drug trafficking crime, "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States," then the court should "apply § 2A1.1 (First Degree Murder) or § 2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under" the drug trafficking guideline. U.S.S.G. § 2D1.1(d)(1).

On his first trip to the First Circuit, Rodríguez challenged the sufficiency of the evidence, as well as the procedural and substantive reasonableness of his sentence. See generally id. We affirmed across the board. Id. at 8 (sufficiency of the evidence); id. at 14-16 (sentencing).

## II

Fast forward more than a decade, to October 2023.[3] That month, Rodríguez (through counsel) moved to reduce his sentence via the First Step Act.

Before we go on further about Rodríguez's case, a word about that 2018 act of Congress. It "authorizes district courts to reduce the prison sentences of defendants convicted of certain offenses involving crack cocaine." Concepcion v. United States, 597 U.S. 481, 486 (2022).[4] To be eligible, the defendant must have violated "a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010," and that violation must have been "committed before August 3, 2010." Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). And if the defendant meets that criteria, the court that

---

[3] We note, but do not detail, how Rodríguez has levied two unsuccessful post-conviction challenges in the meantime.

[4] For a more thorough history of the legislative background to this case, see United States v. Fields, 13 F.4th 37, 39 (1st Cir. 2021), cert. granted, judgment vacated, 142 S. Ct. 2899 (2022).

imposed the sentence may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Id. But importantly, there are two limits: the court can't reduce the sentence if it "was previously imposed or previously reduced in accordance" with the Fair Sentencing Act or if a defendant has already made a First Step Act motion that was "denied after a complete review of the motion on the merits." Id. Finally, the act doesn't require the district court to give sentence reductions if a defendant's eligible; it only permits them. Id.

The First Step Act's references to the Fair Sentencing Act of 2010 naturally prompt another question: "What's that?" Well, we'll tell you. That 2010 act increased "the drug-quantity thresholds for the statutorily prescribed penalty ranges tied to cocaine-base offenses under that statute." United States v. Ayala-Vázquez, 96 F.4th 1, 4 (1st Cir. 2024). For example: before the Fair Sentencing Act, "the penalty range was 10 years' to life imprisonment if the type and quantity of controlled substance were 50 grams or more of cocaine base." Id. (citing 21 U.S.C. § 841(b)(1)(A)(iii) (2008 version)). But since then, 280 grams or more of cocaine base are necessary to trigger that same penalty range. See id. (citing 21 U.S.C. § 841(b)(1)(A)(iii)). Anything from 28 to 279 grams now carries a penalty range of 5 to 40 years of imprisonment. See id. (citing 21 U.S.C. § 841(b)(1)(A)(iii)).

That statutory scheme explained, we turn back to Rodríguez. In his motion, he first argued that the First Step Act applied to his case. He explained (as we just did) that the Fair Sentencing Act raised the quantity of cocaine base necessary to trigger a sentence with a mandatory minimum of 10 years and a maximum of life from 50 grams to 280 grams, and the First Step Act made that change retroactive. So he said a case like his, where he was only convicted of conspiracy to distribute 50 or more grams, would now only carry a statutory penalty range of 5 years minimum to 40 years maximum. From that premise, he contended that the district court should exercise its discretion to impose a lower sentence of 210 months, based on the § 3553(a) factors[5] and his "exemplary" post-conviction behavior.

The district court ordered the government and probation to respond. The government said that the Fair Sentencing Act already applied when Rodríguez was originally sentenced, because he received his sentence on December 7, 2010 (after the act went into effect), so he was ineligible for First Step Act relief. And

---

[5] 18 U.S.C. § 3553(a) details the factors that a sentencing court must consider in imposing a sentence "sufficient, but not greater than necessary" for a particular defendant. These factors are also fair game for considering a sentencing reduction under the First Step Act. See Concepcion, 597 U.S. at 496-97 (explaining the broad universe of factors that a district court can consider under the First Step Act); see also United States v. Clay, 50 F.4th 608, 612 (7th Cir. 2022) (noting that district "courts may consider the factors laid out in 18 U.S.C. § 3553(a)" in resolving a First Step Act motion).

- 7 -

anyway, said the government, the district court need not exercise its discretion to grant relief to one leader of a drug conspiracy whose actions led to the violent deaths of several people.

Probation, meanwhile, said that Rodríguez was eligible for a First Step Act sentence reduction based on Count One. Were he sentenced under the Fair Sentencing Act, probation explained, his statutory penalties would have been between 5 years minimum and 80 years maximum, but not life imprisonment.[6] It declined to make a sentencing recommendation one way or the other.

With all that in hand, the district court denied Rodríguez's motion in a text order. It explained:

> Defendant is not eligible for relief pursuant to the First Step Act because he was sentenced when the Fair Sentencing Act was already applicable. In addition, even if he were eligible, taking in consideration [the §] 3553(a) factors, the Court would not reduce his sentence because of his heinous criminal record.

Rodríguez appeals, and here we are.

---

[6] The careful reader will note that the Fair Sentencing Act made the statutory penalty for 50 grams between 5 and 40 years. See 21 U.S.C. § 841(b)(1)(A)(iii). How'd probation reach 80 years as the maximum, then? Remember that under Count One, Rodríguez was also convicted under 21 U.S.C. § 860, which doubles the maximum punishment authorized by § 841(b) for those who commit their offense within 1,000 feet of a "housing facility owned by a public housing authority," i.e., the Nemesio R. Canales public housing project. See Rodríguez I, 714 F.3d at 4, 6.

- 8 -

Before us, Rodríguez contends the district court made two big mistakes. First, he laments it erred as a matter of law in saying that he wasn't eligible for First Step Act relief. Second, he insists that, in alternatively assuming that he was eligible for a sentence reduction, it abused its discretion in anyway denying him such relief.

We will jump straight into Rodríguez's second argument.[7] And, to headline our conclusion, it is an argument we cannot agree with. Although the district court's treatment of Rodríguez's motion was hardly robust, its decision not to reduce his sentence was surely not outside the bounds of its discretion, so we see no reason to disturb it. See Concepcion, 597 U.S. at 501 (explaining that "appellate review" of a district court's exercise of First Step Act discretion "should not be overly searching," aside from investigating "legal errors in recalculating the Guidelines to account for the Fair Sentencing Act's changes"); see also United States v. Smith, 954 F.3d 446, 452 (1st Cir. 2020).

The district court first stated that it considered the § 3553(a) factors, which both Rodríguez and the government had

_____

[7] We decline to venture into his first argument because, even if it were a winner (and we're not saying it is), the district court's decision in denying him First Step Act relief anyway based on his "heinous criminal record" wasn't an abuse of its discretion (as we'll soon explain).

fully briefed below.  See United States v. Colón-Cordero, 91 F.4th 41, 53 (1st Cir. 2024) (noting how "a court's reasoning can often be inferred by comparing what was argued by the parties . . . with what the judge did" (cleaned up)).  As to the factors, Rodríguez highlighted how he "was born and raised in a broken family," how he "had a long history of substance abuse" dating back to age 10, how his abuse of drugs at an early age impacted his cognitive development, how he completed schooling only through seventh grade, and how he lived in "an economically and socially deprived environment" of housing projects throughout his life.  Despite all that, Rodríguez explained that he had capitalized on his seventeen years of incarceration thus far.  Since he started, he had done over 1,900 hours of educational and vocational programming at the prison.  And he included a note from a prison staff supervisor (addressed to him) explaining his tremendous progress:

> I can attest that you have done a job in your studies exceptionally well, and mimic attributes of the pillars of our communities within here and on the outside.  I believe that you have come a long way and society would be happy to know that.  You have been rehabilitated and have become a responsible individual.  You are [] truly [a] success story.

The government, meanwhile, took a different tack in its § 3553(a) discussion.  It reminded the district court that Rodríguez "played a key role as a leader" in a three-year-long drug conspiracy plaguing a housing project, that the conspiracy

- 10 -

led to the murder of several individuals (all to protect or advance the drug conspiracy), and that Rodríguez himself had murdered Agustín. There was (in the government's view) thus no "compelling reason" to reduce his sentence.

Through its decision, the district court clearly agreed with the government. That it chose to give more weight to what it reasonably called Rodríguez's "heinous criminal record" (his involvement in several murders -- one particularly cold-blooded -- in furtherance of the drug-dealing conspiracy) than his commendable rehabilitative efforts is not a decision we will second guess. See Concepcion, 597 U.S. at 501 (explaining that "appellate review" of sentencing under the First Step Act "should not be overly searching"); cf. United States v. Gibbons, 553 F.3d 40, 47 (1st Cir. 2009) ("We will not disturb a well-reasoned decision to give greater weight to particular sentencing factors over others . . . .").

Rodríguez's three arguments to the contrary don't convince us otherwise. First, Rodríguez says that the district court failed to properly explain its grounds of decision. But after reviewing the whole record, we can readily discern the district court's reasoning (indeed, we just walked through it). Cf. United States v. Texeira-Nieves, 23 F.4th 48, 56 (1st Cir. 2022) (explaining that "we consider the entire context and record in determining whether a district court's denial of a

- 11 -

compassionate-release motion allows for adequate appellate review"); Chavez-Meza v. United States, 585 U.S. 109, 118 (2018) (same for a regular sentencing modification). And while it's true that the district court "must generally consider the parties' nonfrivolous arguments before it," it can "in its discretion" under the First Step Act "dismiss arguments that it does not find compelling without a detailed explanation." Concepcion, 597 U.S. at 501. To boot, the district court isn't "required to articulate anything more than a brief statement of reasons," nor must it "expressly rebut each argument made by the parties." Id. (cleaned up).

Instead, "all that the First Step Act requires is that a district court make clear that it reasoned through the parties' arguments." Id. (cleaned up). We've detailed the § 3553(a) arguments that Rodríguez and the government made to the district court, and "there is not the slightest reason to think that the district court overlooked" any of them. United States v. Llanos-Falero, 847 F.3d 29, 36 (1st Cir. 2017) (cleaned up). In noting the "heinous" record, the district court implicitly attributed more weight to Rodríguez's murder of Agustín and his other grave criminal acts than his rehabilitation for § 3553(a) purposes; it thus "reasoned through the parties' arguments" well

enough for us to provide meaningful appellate review. Concepcion, 597 U.S. at 501 (cleaned up).[8]

Second, Rodríguez complains that the district court overlooked "the broad scope of intervening changes of fact and the law" since his first sentencing. As for changes in fact, he points mainly to his rehabilitative efforts. But (as we just explained) we think it is wrong to say that the district court did not consider that evidence; again, that it did not detail why such evidence was unpersuasive (especially when compared to the murders) was permissible under Concepcion. See id. (explaining how the First Step Act allows the district court to "dismiss arguments that it does not find compelling without a detailed explanation").

And as for intervening changes of law, Rodríguez mainly laments how the district court didn't (1) consider the Fair Sentencing Act's changes or (2) recalculate his Guidelines sentencing range. Re: the Fair Sentencing Act's changes, "simply

---

[8] Relatedly, Rodríguez contends that the district court's reliance on his "heinous criminal record" was wrong because, before the events of the underlying case, he had no criminal record (as evidenced by his Guidelines criminal history category being only I). We think it rather obvious that the district court meant the "heinous criminal record" he acquired during the events we've described, and such a consideration is of course relevant under § 3553(a)(1), "the nature and circumstances of the offense," as well as § 3553(a)(2)(A), which allows for the sentence imposed "to reflect the seriousness of the offense." Cf. United States v. Duluc-Méndez, 156 F.4th 55, 64 n.4 (1st Cir. 2025) ("We think it is fairly inferred, however, that the court considered Duluc's most recent conviction, for which he has served over a decade in prison, to be part of his 'criminal record.'").

because the district court didn't expressly mention" those changes "doesn't mean it didn't consider" them, and "the record shows the district court adequately reviewed" the arguments about the statutes before it, especially since it did consider eligibility as a threshold matter. United States v. Rodríguez-Rosado, 909 F.3d 472, 480-81 (1st Cir. 2018).

Re: the Guidelines, we agree with the government that Rodríguez failed to argue below that his Guidelines calculation would be different after the Fair Sentencing Act and thus forfeited the argument. See Triantos v. Guaetta & Benson, LLC, 91 F.4th 556, 563 (1st Cir. 2024) ("When a party fails to raise an argument to the district court, we consider that argument forfeited and review only for plain error."). And on appeal, he hasn't done much to rectify that forfeiture; all he really says is that changes in the Guidelines "may have applied" to him and thus justify a lower range. His failure to develop the point further means we won't be attributing error to the district court's decision not to issue a new Guidelines calculation. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (explaining that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").[9]

---

[9] One more point here. Recall that Rodríguez's original Guidelines range was driven less by the guidelines connected to his drug offense and far more by the murder cross-reference guideline. See Rodríguez I, 714 F.3d at 15. Concepcion says a

Finally, Rodríguez contends that the district court, in denying him relief, left standing a sentence "greater than necessary," contra § 3553(a). But recall that we concluded this sentence passed the "substantive reasonableness" test the first time around. See Rodríguez I, 714 F.3d at 16 ("Given the district court's findings about the violent nature of the drug conspiracy and Rodríguez's participation in at least one murder, it was not unreasonable for the district court to weigh the need for punishment and deterrence over the potentially mitigating effects of Rodríguez's personal background."). And while we take notice of the developments in the law and the facts since the district court first issued Rodríguez's sentence, those developments don't (for the reasons we've already provided) tip the scales so greatly as to make the district court's decision not to modify his sentence an abuse of its discretion. See United States v. Walker, 665 F.3d 212, 222-23 (1st Cir. 2011) ("An abuse of discretion occurs . . . when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales." (cleaned up)). So that cannot serve as the basis for an assignment of error.

district court cannot "recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act." 597 U.S. at 498 n.6. Yet Rodríguez doesn't spell out how -- given the murder cross-reference's important place in the original calculation -- his Guidelines range would be different after the Fair Sentencing Act.

**IV**

That's all to say: we **affirm**.