# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1976
_____

Cornice & Rose International, LLC

*Plaintiff - Appellant*

v.

Four Keys, LLC; First Security Bank & Trust Co.; Perry
Novak Electric, Inc.; Kurt Herbrechtsmeyer; Dean Snyder
Construction Co.; Mick Gage Plumbing & Heating, Inc.;
Northern Cedar Service Co., Inc.; WWA Design, LLC,
doing business as Atura Architecture

*Defendants - Appellees*

Marco Technologies, LLC; Young Construction, Ltd.;
Kamm Excavating Corp.; Superior Lumber, Inc.; Brian Young

*Defendants*
_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern
_____

Submitted: April 12, 2023
Filed: August 11, 2023
[Published]
_____

Before LOKEN, SHEPHERD, and KELLY, Circuit Judges.

_____

PER CURIAM.

The Architectural Works Copyright Protection Act of 1990 (AWCPA)[1] extended copyright protection to "architectural works," 17 U.S.C. § 102(a)(8), defined in 17 U.S.C. § 101 as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." The principal question raised by this appeal is whether First Security Bank & Trust Company (the "Bank"), which purchased an uncompleted building in a sale approved by the bankruptcy court in the property owner's Chapter 7 liquidation proceeding, infringed the architect's copyright in the building by *completing* the building without the permission of the building's architect, Cornice & Rose ("C&R"). On this record, we agree with the district court there was no actionable infringement because C&R's infringement claims are precluded by the bankruptcy court's order approving the sale.

## I. Background

McQuillen Place Company, LLC ("McQuillen"), retained C&R, an architectural firm, to design a building to be built in Charles City, Iowa ("the Building"). C&R obtained copyright protection under the AWCPA for its technical drawings and for the building itself, the tangible embodiment of its design work product. See 17 U.S.C. § 102(a)(5) & (8). The Bank was the primary construction lender to McQuillen and obtained a first mortgage on the Building. On April 25, 2019, with the Building approximately ninety percent complete, McQuillen halted construction and filed for protection under Chapter 11 of the Bankruptcy Code.

_____

[1]Pub. L. No. 101-650, §§ 701-706, 104 Stat. 5133-34 (1990) (codified at scattered sections of 17 U.S.C.).

The bankruptcy case was later converted to a Chapter 7 liquidation proceeding. In March 2020, the United States Trustee moved to sell the Building to the Bank as high bidder under 11 U.S.C. § 363(b) and also sought "to have the sale free and clear of liens which is authorized, under certain circumstances, by 11 U.S.C. § 363(f)." C&R entered an appearance and objected to the sale on various grounds, including violation of its intellectual property rights. In response, the Bank filed a pre-hearing brief suggesting the following language in the court's approval order to address this objection:

> So long as the new owner or its architect or agents do not use the Plans or Drawings in which Cornice & Rose International, LLC claims a copyright, the new owner may use and occupy the Property, develop the Property, and complete the existing interior and exterior of the Property, free and clear of existing and future claims of C & R, including claims of copyright infringement. The new owner may not use C & R's Plans or Drawings without first making arrangements satisfactory to C & R for their use. Nothing contained herein shall preclude future claims of copyright infringement resulting from the improper or unauthorized use of the Plans or Drawings by any new owner or third parties.

At a hearing on the Trustee's motion to sell attended by the Trustee and by counsel for C&R and the Bank, counsel for C&R argued that its copyright protection in the Building itself would be infringed by an order authorizing the proposed sale. C&R specifically addressed the Bank's suggested language:

> "[T]hat language is just not sufficient in large part because it refers to plans and drawings. That language that's being suggested contemplates incorrectly that the only copyright interest held by my client is simply in the plans and drawings, and it doesn't take into consideration . . . the fact that the embodiment of the copyright is for the full structural portion of the building, configurations, components, and so forth."

In response, Counsel for the Bank suggested that the order authorizing the sale say that the purchaser "may not use plans or drawings *or anything else in which C & R has a valid copyright*" (emphasis added). In hindsight, it seems apparent that counsel for the Bank did not sufficiently research the AWCPA, or he would have suggested language that defined the extent to which the purchaser could "use" the Building under § 120(b) and clarified that the owner's "first sale" right to sell "a particular copy . . . lawfully made" permitted a subsequent sale. <u>See</u> 17 U.S.C. § 109(a).[2]

On April 9, 2020, the bankruptcy court entered an order authorizing sale of the uncompleted Building to the Bank. Adopting the language suggested by the Bank's counsel, Paragraph 19 of the Order provided:

> **Copyright:** So long as the Purchaser, or its assignee, or its architect or agents do not use the Plans or Drawings or any work in which Cornice & Rose International, LLC ("C & R") holds a valid copyright (the C & R Intellectual Property), the Purchaser, or its assignee, may use and occupy the Property, develop the Property, and complete the existing interior and exterior of the Property, free and clear of existing and future claims of C & R, whether for copyright infringement or otherwise. The Purchaser, or its assignee, or its architect or agents may not use the C & R Intellectual Property without first making arrangements satisfactory to C & R for the use of the C & R Intellectual Property. Nothing contained herein shall preclude future claims of copyright infringement resulting from the improper or unauthorized use of the C & R Intellectual Property by the Purchaser, or its assignee, or any third parties.

C&R promptly filed a motion to reconsider, arguing that the bankruptcy court could not authorize completion of the Building due to "C&R's exclusive right of

---

[2]<u>See generally</u> <u>Kirtsaeng v. John Wiley & Sons, Inc.</u>, 568 U.S. 519, 535 (2013); <u>Am. Int'l Pictures, Inc. v. Foreman</u>, 576 F.2d 661, 664 (5th Cir. 1978) ("After the first sale of a copy the copyright holder has no control over the occurrence or conditions of further sales of it.").

reproduction." At a hearing on the motion to reconsider, citing the AWCPA, counsel for C&R explained its position:

> under the contract that it had with [McQuillen] the license for the use of [the Building] was conditioned on full, complete and timely payment. That has not occurred [as] laid out in our Proof of Claim. So for that reason there is no license for the construction of the building and, therefore, the building is, indeed, an infringing copy of the architectural work.

The bankruptcy court then asked, "[s]o you're saying any time there's language in [the license] that says [it] is only effective upon payment in full . . . and a building is built [and] the architect is not paid in full, it can't be sold without the architect's permission period?" Counsel replied, "Correct. . . . I wouldn't call it a security interest . . . it's what it is, it's a copyright." The court commented, "So you're telling me if you don't sign off on it and everybody just walks away . . . [y]ou don't have a security interest, you just have like a stopping measure . . . nobody can do anything until you're paid in full? . . . I'll just say I've never heard of that." The following day, the bankruptcy court denied C&R's motion to reconsider "for the reasons stated in the Resistances and Joinders thereto and at the hearings."

C&R timely appealed the bankruptcy court's order; its motion for a stay pending appeal was denied. The Trustee then sold the Building to the Bank, and the Bank assigned its interest to Four Keys, LLC ("Four Keys"), which then hired multiple companies to finish the nearly-complete Building. On September 25, 2020, Judge Williams of the Northern District of Iowa dismissed the appeal as moot because a purchaser -- the Bank -- had bought the Building in good faith and the sale was not stayed pending appeal. See 11 U.S.C. § 363(m). On December 22, 2020, a panel of this Court granted Four Keys's motion to dismiss C&R's appeal because the case was statutorily moot. Cornice & Rose Int'l, LLC v. Smith, No. 20-3242, 2020 WL 9349569 (8th Cir. Dec. 22, 2020).

-5-

Before C&R fully exhausted its direct appeal of the bankruptcy court's order, it filed this lawsuit against the Bank and its President, Four Keys, and other persons and companies that engaged in construction to complete the Building or observed C&R's protected design work product and used it to engage in construction activities. C&R's amended complaint alleges that all defendants infringed C&R's architectural works copyright by finishing the Building because that is an infringing derivative work (Count I); seeks a declaratory judgment that any rental or sale of the Building without C&R's express permission "will be a further act of copyright infringement" (Count II); and alleges copyright infringement of its technical drawings (Count III).

On September 20, 2021, the district court[3] dismissed Counts I and II because (i) C&R failed to allege any copying, (ii) the Building owner's right to finish the Building is protected from a claim of copyright infringement by 17 U.S.C. § 120(b), and (iii) Counts I and II are barred by the doctrine of res judicata. Following discovery regarding Count III, Defendants moved for summary judgment. After initial briefing, C&R filed a "Notice of Intention to File a Response to Defendant's Reply Brief," arguing that two defendants had raised new arguments to which C&R did not have a chance to reply. The district court, finding that defendants simply responded to issues raised by C&R, construed the request as a motion to file a sur-reply and denied the motion. The court granted the Bank's motion for summary judgment, concluding "C&R cannot demonstrate the . . . substantial similarity necessary for copyright infringement, and Defendants' completion of the Building with or without using C&R's copyrighted plans is not copyright infringement." This appeal followed.

C&R presents two issues on appeal: first, whether the district court erred in dismissing Count I, the architectural works copyright claim, and the Count II

_____

[3]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

declaratory judgment claim; and second, whether the court erred in granting summary judgment dismissing Count III "on the basis of arguments that [C&R] did not have an opportunity to respond to." Thus, these are the only issues we will consider. See Hays v. Hoffman, 325 F.3d 982, 986 n.2 (8th Cir.), cert. denied, 540 U.S. 877 (2003).

## II. Discussion

A. Dismissal of Counts I and II. The district court dismissed Counts I and II for multiple reasons, one of which was claim and issue preclusion. "Claim preclusion, or res judicata, provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Plough By & Through Plough v. W. Des Moines Cmty. Sch. Dist., 70 F.3d 512, 515 (8th Cir. 1995) (quotation omitted). Issue preclusion "bars the relitigation of factual or legal issues that were determined in a prior . . . court action, and applies to bar relitigation in federal court of issues previously determined." Banks v. Int'l Union Elec., 390 F.3d 1049, 1054 (8th Cir. 2004) (quotation omitted). Issue preclusion applies "if the party against whom it is used had a full and fair opportunity and incentive to litigate the issue in the prior action." Id. "The preclusive effect of a federal-court judgment is determined by federal common law." Taylor v. Sturgell, 553 U.S. 880, 891 (2008).

The issue C&R seeks to relitigate is the scope of its intellectual property rights in the Building. That issue was actually litigated in the bankruptcy court. In opposing the bankruptcy sale, C&R argued that the AWCPA granted it copyright protection from the buyer finishing the Building. The bankruptcy court rejected that argument, authorized the sale, and in paragraph 19 of its approval order authorized the Building's owner to complete the Building. C&R filed a motion for reconsideration; counsel argued that "any purchaser is not going to have the ability to effectively use the building because of . . . the copyright." The bankruptcy court denied reconsideration. C&R appealed the approval order, but the appeal was

dismissed under the Bankruptcy Code because the sale had been completed. See 11 U.S.C. § 363(m). The judgment is therefore final.

We reject C&R's contention that the bankruptcy court's order authorizing sale of the Building "is not a final judgment that has preclusive effects" because C&R's appeal was dismissed based on "[Bankruptcy Code] policies limiting review of sales by a Trustee," and our decision "was perfunctory and did not address the basis for affirmance." In our view, relevant § 363(m) cases establish that the argument is without merit. See In re Veg Liquidation, Inc., 931 F.3d 730, 737-38 (8th Cir. 2019), cert. denied, 140 S. Ct. 904 (2020).

C&R argues that the bankruptcy court's order does not have preclusive effect because it "does not clearly authorize the use of the building" by the purchaser. However, Paragraph 19 explicitly authorizes the use C&R now disputes: "use and occupy the Property, develop the Property, and complete the existing interior and exterior of the Property." C&R further argues that authorization of a sale by a Trustee "is not subject to effective review and, should be entitled to limited preclusive effect." We disagree. Denying sale orders full preclusive effect would negate the purpose of § 363(m), to ensure the finality of bankruptcy sales. See, e.g., In re C.W. Mining Co., 574 B.R. 748, 767-70 (Bankr. D. Utah 2017); In re Veg Liquidation, Inc., 572 B.R. 725 (Bankr. W.D. Ark. 2017), aff'd, 583 B.R. 203 (B.A.P. 8th Cir. 2018), aff'd, 931 F.3d 730 (8th Cir. 2019), cert. denied, 140 S. Ct. 904 (2020). Like the district court, we conclude the bankruptcy court's order precludes Counts I & II.

For the foregoing reasons, we conclude the district court properly granted Defendants' motions to dismiss Counts I and II. We therefore need not address C&R's additional arguments that the building owner's AWCPA right to "alter or destroy" the building, 17 U.S.C. § 120(b), does not include the right to "complete" the building without the architect's permission, and that completion of the building in this case created an infringing derivative work, see 17 U.S.C. § 106(2).

B. District Court's Denial of C&R's Motion to File a Sur-reply.  After the district court dismissed Counts I and II of the Amended Complaint, the parties engaged in discovery regarding Count III, the technical drawings infringement claim. Four Keys and the Bank then moved for summary judgment dismissing Count III, arguing that Defendants did not use or copy C&R's technical drawings *and* they had a legal right to produce their own drawings to complete the Building.  Four Keys and the Bank explained that, after DSC's employee took measurements of the Building with a laser scanning device, WWA doing business as Atura Architecture generated plans to complete the Building.  DSC and WWA joined in this motion.  In its resistance, C&R argued it could conclusively show that DSC/Atura copied C&R's plans and *then* did measurements that resulted in changing the final construction plans.  After Four Keys and the Bank filed a reply memorandum, DSC and WWA filed a supplemental affidavit in support noting thirteen differences between the Atura Generated Plans and C&R's plans, demonstrating that DSC in fact measured the Building and did not copy C&R's plans.

C&R then filed a "Notice of Intention to File a Response" stating that DSC and WWA had raised new fact-based arguments; asserting that it had the right to file as many reply briefs as it wanted, citing a Southern District of Georgia decision rather than contrary Northern District of Iowa precedent;[4] and requesting an extension of time to file a reply addressing the new arguments.  The district court ruled that its local rules provide no right to file a sur-reply, a pleading that is "generally disfavored."  The district court therefore treated C&R's "Notice of Intention" as a motion for leave to file a sur-reply and denied the motion, finding that DSC and WWA had simply responded to issues raised by C&R's resistance.  The district court then granted the Bank's motion for summary judgment.  C&R appealed without filing

---

[4]Compare Podger v. Gulfstream Aerospace Corp., 212 F.R.D. 609, 609 (S.D. Ga. 2003), with Fleshner v. Tiedt, No. 15-CV-2033-CJW, 2019 WL 271619, at *2 (N.D. Ia. Jan. 18, 2019).

a motion for reconsideration. On appeal, C&R argues the court erred in granting summary judgment "on the basis of arguments that [C&R] did not have an opportunity to respond to." We conclude the argument is frivolous, in part because it was not raised to the district court in a motion to reconsider.

To succeed on its Count III claim of infringement, C&R had to prove that one or more Defendants copied original elements of the copyrighted technical drawings. Absent direct evidence of copying, this required evidence of substantial similarity of both ideas and expression in the infringing material. In granting summary judgment, the district court concluded: (i) it is undisputed that Four Keys owned the Building, contracted with DSC to complete the Building, and DSC had WWA generate plans to complete the Building; (ii) C&R does not claim WWA's final plans used to complete the Building were infringing materials; (iii) the final plans corrected issues in WWA's earlier plans; (iv) the one aspect of the earlier plans on which C&R based its claim of infringement "appears fairly minimal to meet the substantially similar standard" for infringement; (v) alternatively, even if the earlier plans were used to complete the Building, the purpose of the plans was to complete the Building, which § 120(b) permitted Four Keys to do without C&R's consent.

We review the district court's decision to deny C&R's request to file a sur-reply for abuse of discretion. See, e.g., Graning v. Sherburne Cnty., 172 F.3d 611, 614 n.2 (8th Cir. 1999). The district court ruled that C&R failed to prove its Count III claim of copying. Neither in the district court nor on appeal does C&R explain what it would have argued in a sur-reply brief. And C&R makes no showing on appeal that the district court would have reached a different result (i.e., denied summary judgment) had it been allowed to file a sur-reply. In other words, the argument is entirely procedural. Further, it ignores that sur-replies are viewed with disfavor and that a party appealing the denial of leave to file a discretionary pleading has a heavy burden to prove that the adverse procedural ruling mattered. Here, even if C&R's contention that DSC and WWA raised new or additional arguments in the

supplemental affidavit is fairly debatable, we conclude that denial of permission to file the requested sur-reply in a thoroughly litigated case was a textbook example of harmless error. There certainly was no abuse of discretion.

For the foregoing reasons, the judgments of the district court are affirmed.

LOKEN, Circuit Judge, concurring.

I join the Court's per curiam opinion. In addition, I would affirm the district court's rulings that the Building owner's right to alter or destroy the building granted in the AWCPA includes a bona fide purchaser's right to complete the unfinished Building, and that completion of the Building did not "copy" the Building by creating an unauthorized derivative work.

The AWCPA in 1990 extended Copyright Act protection to "architectural works," including in a protected design the building as well as its architectural plans and drawings. The scope of this new protection has a special limitation: "the owners of a building embodying an architectural work may, without the consent of the . . . copyright owner of the architectural work, make or authorize the making of alterations to such building, and destroy or authorize the destruction of such building." 17 U.S.C. § 120(b). There is very little case law interpreting these provisions and none by this court.

To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Service Co., Inc., 499 U.S. 340, 361 (1991); see Warner Bros. Ent., Inc. v. X One X Productions, 644 F.3d 584, 595 (8th Cir. 2011). It is undisputed that C&R has a valid architectural works copyright in the Building as a tangible embodiment of C&R's protected design. See 17 U.S.C. § 101. But the district court concluded nothing was copied when

-11-

Defendants completed the Building after the bankruptcy sale. I agree. Completing an unfinished building does not make a copy of the building, and here there is no second structure alleged to be a copy of the Building, either incomplete or completed. Copying is a necessary element of a derivative works copyright infringement claim. See Frye v. YMCA Camp Kitaki, 617 F.3d 1005, 1008 (8th Cir. 2010).

McQuillen owned the Building when it halted construction and filed for Bankruptcy Code protection. C&R owned the copyright but the unfinished Building became part of McQuillen's bankruptcy estate. The Bank lawfully acquired the Building in an approved bankruptcy sale and assigned its owner's rights to Four Keys. That sale did not create a copy. See Christopher Phelps & Associates, LLC v. Galloway, 492 F.3d 532, 544 (4th Cir. 2007). C&R asserts that completion of the Building created an unauthorized "derivative work," violating C&R's exclusive right "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(2); see Mulcahy v. Cheetah Learning LLC, 386 F.3d 849, 852 (8th Cir. 2004). Not surprisingly, C&R cites no authority for the illogical proposition that one who completes an unfinished building purchased from its owner's bankruptcy estate "prepares a derivative work."

The AWCPA grants a building owner the right to alter or destroy the building without the consent of the author or copyright owner of the architectural work "[n]otwithstanding the provisions of § 106(2)." 17 U.S.C. § 120(b). When a purchaser lawfully acquires a building that is the embodiment of a copyrighted architectural works design, § 120(b) removes any limits on the means by which the new owner may alter the building without fear of copyright infringement. See Javelin Investments, LLC v. McGinnis, No. CIV A H-05-3379, 2007 WL 781190 (S.D. Tex. Jan. 23, 2007), report and recommendation adopted, No. CV H-05-3379, 2007 WL 9753202 (S.D. Tex. Feb. 8, 2007); Ringdahl Architects, Inc. v. Swendsrud Constr., Inc., No. CV 16-1060 (DWF/LIB), 2017 WL 5157605, at *4 n.4 (D. Minn. Nov. 6, 2017).

I find C&R's argument that the building owner's right to alter or destroy the building does not include the right to *complete* it to be without merit. Legislative history confirms the logically compelling inference that Congress in the AWCPA did not give copyright owners the power to enjoin completion of buildings that have already been substantially built. See H.R. Rep. 101-735 at 12-14 (1990), *reprinted in* 8 1990 U.S.C.C.A.N. 6935, 6943-45. "Congress correctly viewed alteration and destruction of a building by its owner to be practical necessities. . . . In order to perform its utilitarian functions, a building must be able to adapt and change. Conditioning changes on the approval of the original architect may lead to frustrating delays." Raphael Winick, Note, Copyright Protection for Architecture After the Architectural Works Copyright Protection Act of 1990, 41 Duke L.J. 1598, 1622-23 (1992). C&R urged the bankruptcy court to grant it just this kind of veto right. Like the district court, I agree that the bankruptcy court properly rejected the argument.

_____