# United States Court of Appeals
## For the First Circuit

No. 21-1734

UNITED STATES,

Appellee,

v.

ÁNGEL AYALA-VÁZQUEZ,
a/k/a El Buster, a/k/a El Negro,
a/k/a Angelo Millones Papa Upa,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Kayatta and Montecalvo, Circuit Judges.

Rafael F. Castro Lang for appellant.
David C. Bornstein, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Appellate Division, were on brief, for appellee.

March 12, 2024

**BARRON**, **Chief Judge**.  This appeal is the most recent one that Ángel M. Ayala-Vázquez ("Ayala") has brought to us in relation to his federal convictions on drug-offense-related charges.  See United States v. Ayala-Vazquez, 751 F.3d 1 (1st Cir. 2014); Ayala-Vazquez v. United States, No. 18-2171, 2019 WL 10947347 (1st Cir. Nov. 22, 2019).  Here, he challenges the denial of his attempts to have the life sentences that he received for those convictions reduced.  We affirm.

## I.

In April 2010, a federal grand jury in Puerto Rico handed up an indictment that charged Ayala and sixty-three co-defendants with various federal crimes related to their involvement in a drug-trafficking organization based in the Commonwealth.  See Ayala-Vazquez, 751 F.3d at 7.  The indictment charged Ayala in relevant part with (1) "knowingly and intentionally . . . conspir[ing] . . . to knowingly and intentionally possess with intent to distribute and distribute controlled substances, to wit: in excess of one (1) kilogram of heroin . . . in excess of fifty (50) grams of cocaine base . . . in excess of five (5) kilograms of cocaine . . . [and] in excess of one thousand (1000) kilograms of marijuana," among other controlled substances, "within one thousand (1,000) feet of the real property comprising a public housing project," in violation of 21 U.S.C. §§ 841(a)(1) and 860

(Count I); and (2) "knowingly and intentionally possess[ing] with intent to distribute fifty (50) grams or more of a mixture or substance containing . . . cocaine base . . . within one thousand (1,000) feet" of a public-housing project, in violation of 21 U.S.C. §§ 841(a)(1) and 860 and 18 U.S.C. § 2 (Count IV).

Ayala's trial took place in March 2011. At the charge conference, the government noted that, following Ayala's indictment, Congress had passed the Fair Sentencing Act -- which amended 21 U.S.C. § 841 as of August 3, 2010, by increasing the drug-quantity thresholds for the statutorily prescribed penalty ranges tied to cocaine-base offenses under that statute -- and that the Act's amended penalty-range provisions would apply to Ayala. See Fair Sentencing Act, Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372 (2010) (amending 21 U.S.C. § 841(b)(1)(A)(iii) by striking "50 grams" and inserting "280 grams" and amending § 841(b)(1)(B)(iii) by striking "5 grams" and inserting "28 grams").

Prior to the Fair Sentencing Act, § 841 had set forth three distinct quantity-based penalty ranges for cocaine-base-related offenses. For a § 841 offense of possessing with intent to distribute a controlled substance, the penalty range was 0 to 20 years' imprisonment if the type and quantity of controlled substance were unspecified. See § 841(b)(1)(C) (2008). For an § 841 offense of possessing with intent to distribute a controlled

- 3 -

substance, the penalty range was 5 years' to 40 years' imprisonment if the type and quantity of controlled substance were 5 grams or more of cocaine base. See § 841(b)(1)(B)(iii) (2008). For an offense of possessing with intent to distribute a controlled substance, the penalty range was 10 years' to life imprisonment if the type and quantity of controlled substance were 50 grams or more of cocaine base. See § 841(b)(1)(A)(iii) (2008).

After the Fair Sentencing Act, there remain three distinct statutory penalty ranges for cocaine-base-related offenses. However, the Act raised the quantities of cocaine base necessary to trigger the higher penalty ranges. So, for the offense of possessing with intent to distribute a controlled substance, the penalty range is still 0 to 20 years' imprisonment if the quantity and type of the controlled substance are unspecified, see § 841(b)(1)(C), but an offender must now possess with intent to distribute 28 grams or more of cocaine base to trigger the penalty range of 5 years' to 40 years' imprisonment, see § 841(b)(1)(B)(iii), and 280 grams or more of cocaine base to trigger the penalty range of 10 years' to life imprisonment, see § 841(b)(1)(A)(iii).

Ayala's indictment was handed up prior to the Fair Sentencing Act's enactment. But because, at the time of Ayala's trial, the Fair Sentencing Act required that an offender aid and abet or conspire in the possession of 280 grams or more of cocaine

- 4 -

base to trigger the penalty range of 10 years' to life imprisonment, the government requested a special verdict form. That form asked, as to Count I, whether the jury found beyond a reasonable doubt that Ayala had conspired to possess with intent to distribute 280 grams or more of cocaine base and, as to Count IV, whether the jury found beyond a reasonable doubt that Ayala had aided and abetted the possession of with intent to distribute 280 grams or more of cocaine base. Ayala did not object to the use of the form.

With respect to Count I, the jury found Ayala guilty of the crime charged in "Count I of the Indictment" and checked the line on the special verdict form indicating that the jury had determined beyond a reasonable doubt that the quantity of cocaine base "which [Ayala] conspired to possess with intent to distribute" was "Two hundred and eighty (280) grams or more." As to Count IV, the jury again found Ayala guilty of the crime charged in "Count Four of the Indictment" and again checked the line on the special verdict form that indicated that the jury had found beyond a reasonable doubt that the amount of cocaine base "which [Ayala] aided and abetted in the possession of with the intent to distribute" was "Two hundred and eighty (280) grams or more." Ayala appealed his convictions to this Court, without contesting that those convictions were for conspiring to possess with intent to distribute and aiding and abetting the possession of with intent

- 5 -

to distribute 280 grams or more of cocaine base, and we affirmed.
See Ayala-Vazquez, 751 F.3d at 35.

Ayala's sentencing took place on October 26, 2011. The
Presentence Investigation Report ("PSR") prepared by the U.S.
Probation Office set forth, in relevant part, under the heading
"Offense" the following:

> **Counts One, Three, Four, Five, and Six**:
> Conspiracy to possess with intent to
> distribute, 50 grams or more of cocaine base
> "crack", one (1) kilogram or more of heroin,
> five (5) kilograms or more of cocaine, and one
> thousand (1,000) kilograms of marihuana,
> within one thousand (1,000) feet of a housing
> facility owned by a public housing, a public
> school, or a park; aiding and abetting[.] (21
> U.S.C. §§ 841(a)(1), 846, and 860, Title 18,
> U.S.C. § 2). Class "A" felonies.

The PSR further stated that "[o]n April 26, 2011, [Ayala]
was found guilty of conspiring to possess with intent to distribute
. . . two hundred and eighty (280) grams or more of cocaine base."
Ayala did not object to these aspects of the PSR.

The sentencing court determined Ayala's base offense
level under the U.S. Sentencing Guidelines to be 38. In doing so,
the sentencing court used the interim version of the Guidelines
that were based on the changes that the Fair Sentencing Act had
made. The sentencing court then applied the relevant offense-level
enhancements and, after finding that Ayala's Criminal History
Category was III, calculated the applicable guideline range to be
that of life imprisonment. Finding "no identifiable information

in [Ayala's] history and characteristics" to justify a downward variance, the sentencing court sentenced Ayala to a term of life imprisonment to be followed by a 10-year term of supervised release on various counts.

Ayala's subsequent collateral challenges under 28 U.S.C. § 2255(a) were denied. See Ayala-Vazquez v. United States, No. 15-2447, 2018 WL 5734595 (D.P.R. Oct. 31, 2018). This Court then denied his request for a certificate of appealability. See Ayala-Vazquez, 2019 WL 10947347, at *1-2.

Several years later, Ayala initiated the post-judgment proceedings that are at the heart of this appeal. On July 20, 2021, Ayala filed with the U.S. District Court for the District of Puerto Rico a motion to reduce his sentence pursuant to § 404(b) of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018), and for relief pursuant to 18 U.S.C. § 3582(c)(1)(A), which is commonly known as the provision that permits a defendant to seek post-sentencing "compassionate release."

In support of the motion, Ayala argued that he was eligible for a sentence reduction under the First Step Act because he had committed a "covered offense" within the meaning of § 404(a) of the First Step Act. He contended that the statutory penalty ranges under 21 U.S.C. § 841 for the cocaine-base offenses for which he had been convicted had been modified by the Fair

Sentencing Act on August 3, 2010, and so after he had committed those offenses.

Ayala separately contended in the motion that he was entitled to relief under 18 U.S.C. § 3582, which provides that a court may modify an individual's term of imprisonment upon that individual's motion if the court determines that "extraordinary and compelling reasons" warrant such a reduction and that the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a reduction. 18 U.S.C. § 3582(c)(1)(A). Ayala argued that the "extraordinary and compelling circumstances" that warranted the reduction of his sentences were that he was a forty-five-year-old man suffering from hypertension and obesity and so was especially vulnerable to COVID-19 if he remained incarcerated.

The government timely opposed Ayala's motion on August 27, 2021. Just four days later, on August 31, 2021, the District Court denied Ayala's motion.[1]

---

[1] Ayala contends that the District Court abused its discretion by both denying his sentence-reduction motion before Ayala had an opportunity to file a reply brief and denying Ayala's motion to correct the District Court's subsequent order granting him leave to file only a motion for reconsideration. The government contends that we do not have jurisdiction over this claim and that, even if we do, there was no abuse of discretion. Ayala concedes that he "fully discuss[es] the factual contentions and legal argument[s]" in his appellate briefs to us that he "would have . . . advance[d] in his reply[] had the District Court . . . allowed him the opportunity to file the reply." Thus, we may bypass the jurisdictional question, see Doe v. Town of Lisbon, 78 F.4th 38, 44-45 (1st Cir. 2023), because we conclude that any error was harmless, given that the arguments Ayala contends he was wrongly

The District Court first concluded that, under § 404(c) of the First Step Act, Ayala was ineligible for a sentence reduction under § 404(b) of that statute because he had been sentenced "in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act." § 404(c), 132 Stat. at 5222. The District Court then also rejected his request for relief under 18 U.S.C. § 3582 on the ground that Ayala had failed to demonstrate extraordinary and compelling reasons to warrant such relief and that, in any event, the factors in 18 U.S.C. § 3553(a) militated against a sentence reduction.

**II.**

We start with Ayala's challenge to the District Court's denial of his First Step Act motion for relief from the life sentences that he received for his convictions for the offenses set forth in Counts I and IV. The First Step Act "made retroactive the Fair Sentencing Act's changes to the mandatory minimum prison sentences for certain federal drug offenses," United States v. Melendez, 16 F.4th 315, 316 (1st Cir. 2021), and § 404 of the First

---

barred from making below are all arguments that he has made to us and that we conclude are meritless. See Cornice & Rose Int'l, LLC v. Four Keys, LLC, 76 F.4th 1116, 1123 (8th Cir. 2023) (holding that the district court's denial of an opportunity to file a sur-reply was harmless where "the argument [was] entirely procedural" and the party made no showing on appeal "that the district court would have reached a different result"); cf. United States v. Gagliardi, No. 98-1078, 1999 WL 1338351, at *3 (1st Cir. June 24, 1999).

- 9 -

Step Act gives "courts authority to reduce the sentences of certain [cocaine-base] offenders," <u>Terry</u> v. <u>United States</u>, 593 U.S. 486, 491 (2021).  But § 404(c) of the First Step Act provides that a person who has received a sentence that was imposed "in accordance with" the amendments made by sections 2 and 3 of the Fair Sentencing Act is not eligible for such relief, and as we have seen, the District Court denied Ayala's request for First Step Act relief on the ground that Ayala was such a person.  Thus, the critical issue on appeal is whether the District Court was right on that score.

Ayala does not dispute that the sentencing court <u>applied</u> sections 2 and 3 of the Fair Sentencing Act in sentencing him.[2] He focuses his challenge instead on whether, even if the sentencing court did apply those sections, the sentences were still not "in accordance with" the relevant provisions of the Fair Sentencing

---

[2] To the extent Ayala contends that those sections were not applied to him at sentencing on the ground that the sentencing court applied the 2010 version of the U.S. Sentencing Guidelines instead of the 2011 version, the latter of which Ayala asserts incorporated the Fair Sentencing Act's lower cocaine base-to-cocaine powder ratio, the argument is without merit. Following the Fair Sentencing Act's enactment, the Sentencing Commission promulgated emergency Guideline amendments that went into effect on November 1, 2010, pursuant to the Act.  <u>See</u> Sentencing Guidelines for United States Courts, 75 Fed. Reg. 66188 (Oct. 27, 2010).  The record supportably shows -- and Ayala does not contest -- that the sentencing court applied that version of the Guidelines, and there is no other indication in the record that the sentencing court did not apply the Fair Sentencing Act in sentencing Ayala.

Act. He contends, contrary to the District Court's ruling denying him First Step Act relief under § 404(c), that the sentences were not "in accordance with" the amendments made by the Fair Sentencing Act because the Act did not permit a sentence of life imprisonment for either of his convictions, as he contends that the maximum sentence that the Fair Sentencing Act permitted for each was only 40 years' imprisonment. He thus contends that we must vacate and remand the District Court's order denying his request for relief under the First Step Act. As we will next explain, however, we are not persuaded by Ayala's contention, even assuming that our review is de novo. See United States v. Goodwin, 37 F.4th 948, 952 (4th Cir. 2022) (reviewing de novo whether a movant's sentences had been imposed "in accordance with" the Fair Sentencing Act to determine whether § 404(c) barred relief under the First Step Act).

## A.

Ayala's challenge as it pertains to his Count IV-related sentence turns on a threshold contention that he makes about the nature of the underlying offense of conviction. He contends that the offense of conviction was the offense under 21 U.S.C. § 841 of aiding and abetting the possession of with intent to distribute 28 grams or more of cocaine base, see 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii), rather than the offense of aiding and abetting the possession of with intent to distribute 280 grams or more of

- 11 -

cocaine base, see § 841(a)(1), (b)(1)(A)(iii).[3]  He thus contends

that, given the amendments that the Fair Sentencing Act made to 21

U.S.C. § 841, the statutory penalty range for his offense of

conviction was 5 years' to 40 years' imprisonment rather than 10

years' to life imprisonment.  On that basis, Ayala contends that

he received a sentence that was not "in accordance with" sections

2 and 3 of the Fair Sentencing Act, as he received a sentence that

the Fair Sentencing Act bars for his offense of conviction.

Ayala's contention that the offense of conviction was of

the 28-grams-or-more kind proceeds as follows: Ayala first points

to the fact that Count IV, as set forth in the second superseding

indictment, charged him with "aiding and abetting" the "knowing[]

and intentional[] possess[ion of] with intent to distribute fifty

(50) grams or more of . . . cocaine base . . . within one thousand

(1,000) feet" of a public-housing project "in violation of Title

21, United States Code, Sections 841(a)(1) and 860; and Title 18,

United States Code, Section 2" (first emphasis added).  Moreover,

Ayala argues, nothing presented to the jury suggested that there

was any other offense of which he could have been found guilty on

---

[3] 18 U.S.C. § 2 sets forth the "aiding and abetting" element
of Ayala's offense as charged in the indictment.  However, neither
party contends that statute is relevant to the present inquiry
insofar as we are ascertaining the penalty range that the Fair
Sentencing Act ties to the cocaine-base offense for which Ayala
was convicted.  Thus, for ease of explanation, we limit our
discussion to the relevant provisions in § 841.

Count IV.  And, in pressing this latter record-based point, Ayala highlights the jury instructions, the transcripts of both parties' closing arguments, and the instructions that the sentencing court gave to the jury, all of which, he argues, support his claim that his offense of conviction was based on his charged offense of the 50-grams-or-more kind.  From there, Ayala goes on to contend that, as a legal matter, his conviction had to be treated at his sentencing -- given that the sentencing took place after the Fair Sentencing Act's amendments took effect -- as if it were for the offense of aiding and abetting the possession of with intent to distribute 28 grams or more of cocaine base.

Now, one might wonder why a conviction on a charge for a 50-grams-or-more offense must be treated as a conviction for a 28-grams-or-more offense for purposes of sentencing.  But there is an answer, at least as Ayala sees it.

The notion appears to be that, after the Fair Sentencing Act, there simply is no 50-grams-or-more offense under § 841 in any meaningful sense.  Prior to the Fair Sentencing Act, Ayala argues, § 841 set a distinct penalty range for an offense of possessing with intent to distribute 50 grams or more of cocaine base -- the range being 10 years' to life imprisonment.  After the Fair Sentencing Act, however, the amended version of § 841 no longer uses that quantity as a peg for any penalty range.  Instead, the Fair Sentencing Act established distinct penalty ranges that

correspond to only three distinct types of quantity-defined § 841 offenses: an offense with an unspecified amount of a controlled substance (which includes cocaine base), which has a penalty range of 0 to 20 years' imprisonment, see § 841(a), (b)(1)(C); an offense with an amount of 28 grams or more of cocaine base, which has the penalty range of 5 years' to 40 years' imprisonment, see § 841(a), (b)(1)(B)(iii); and an offense with an amount of 280 grams or more of cocaine base, which has the penalty range of 10 years' to life imprisonment, see § 841(a), (b)(1)(A)(iii).

The further notion, on Ayala's account, then appears to be that the 50-grams-or-more version of the § 841 offense is properly understood, post-Fair Sentencing Act, to correspond to the 28-grams-or-more rather than the 280-grams-or-more offense. And that is apparently because the 50-grams-or-more offense is pegged to an amount less than 280 grams, such that the penalty range for that conviction must be understood to be 5 years' to 40 years' imprisonment rather than 10 years' to life imprisonment. Accordingly, Ayala contends, the Fair Sentencing Act barred the imposition of the life sentence that he received for his Count IV conviction, thereby rendering the sentence imposed for that conviction not "in accordance with" the relevant provisions of the

Fair Sentencing Act for purposes of § 404(c) of the First Step Act.[4]

In contending that Ayala has it wrong, the government urges us to reject his premise about the nature of his offense of conviction being of the 28-grams-or-more kind. The government argues that, in fact, Ayala was convicted of the offense of aiding and abetting the possession of with intent to distribute 280 grams or more of cocaine base, not the 50-grams-or-more offense (and, hence, the 28 grams-or-more offense), as Ayala contends.

To make the case, the government emphasizes that the jury, in finding Ayala guilty on Count IV, checked the line on the special verdict form that identified the quantity "which [Ayala] aided and abetted in the possession of with the intent to distribute" as being 280 grams or more of cocaine base. Thus, the government contends, Ayala was given a sentence that fell within the permissible statutory range for his offense of conviction and therefore was sentenced "in accordance with" the relevant

---

[4] We note that, because Ayala was convicted of aiding and abetting the possession of with intent to distribute cocaine base within 1,000 feet of a public-housing project, § 860(a) provides that the permissible maximum sentence for that offense may be doubled. See 21 U.S.C. § 860(a). Thus, even under Ayala's theory, the maximum sentence that could have been imposed for his Count-IV conviction was 80 years' imprisonment. But even if the maximum sentence permitted by the Fair Sentencing Act was 80 years' imprisonment, Ayala's contention remains the same insofar as the Act barred the imposition of a life sentence. Accordingly, we refer to the penalty range of 5 years' to 40 years' imprisonment as set forth in § 841(b)(1)(B) for simplicity's sake.

provisions of the Fair Sentencing Act for purposes of § 404(c), just as the District Court ruled, because the Fair Sentencing Act makes clear that a sentence of life imprisonment falls within the permissible statutory range for the 280-grams-or-more offense.

How, then, to resolve this dispute over the nature of the offense of conviction on Count IV? Significantly, Ayala bears the burden of showing that his conviction was for the 28-grams-or-more offense and not the 280-grams-or-more offense. See Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 57-58 (2005) ("Absent some reason to believe that Congress intended otherwise, therefore, we will conclude that the burden of persuasion lies where it usually falls, upon the party seeking relief."). As we will explain, we see no basis for concluding that Ayala has met that burden, because, while he is right that the indictment expressly refers in Count IV to the quantity of cocaine base being 50 grams or more, that feature of the record cannot take him as far as he needs to go.

First, and most importantly, the judgment of conviction with respect to the conviction on Count IV described the "Nature of Offense" as "aiding and abetting" the "possess[ion] with intent to distribute narcotics" without itself identifying a drug amount. Moreover, the judgment relevantly listed the provision, the violation of which constitutes the offense, as being "21 USC 841(a)(1)," and that provision does not itself make any reference

- 16 -

to drug quantities, as only § 841(b) does so, because that is the provision in § 841 that identifies the quantity-based sentencing ranges that apply to the offenses § 841 sets forth.

Further, the judgment of conviction, which was entered November 2, 2011, states that the judgment was imposed the same day as Ayala's sentencing. Thus, the judgment of conviction was entered after the sentencing judge had received and reviewed the PSR, which stated that Ayala "was found guilty of" aiding and abetting the "possess[ion of] with intent to distribute . . . two hundred and eighty (280) grams or more of cocaine base" -- a feature of the PSR to which Ayala had not objected.

Thus, from the face of the judgment of conviction, it does not appear that the sentencing judge, in entering judgment, understood drug quantity to be an element of the offense of which Ayala had been convicted -- which, if true, undermines Ayala's contention that he was convicted of the 50-grams-or-more offense (and hence the 28-grams-or-more offense). Nor do the features of the record on which Ayala asks us to focus show otherwise.

Notably, the indictment, in setting forth the elements of the offense, tracks the judgment of conviction in referring only to § 841(a), which makes no reference to drug quantity, and not § 841(b), which is the portion of the statute that does refer to drug quantity. Thus, it is not evident from the face of the indictment that the quantity of cocaine base that is

referenced -- 50 grams or more -- was understood to have identified an element of the offense rather than merely a means of committing an offense that, as charged, was understood to be comprised of only non-quantity-based elements. See, e.g., United States v. Starks, 861 F.3d 306, 316 (1st Cir. 2017) (discussing ways "of distinguishing elements [of an offense] from means [of committing an offense]"); King v. United States, 965 F.3d 60, 66-67 (1st Cir. 2020).

Consistent with this understanding, jury instruction 26 disclaims that drug quantity is an element of the offense charged. Moreover, on the seventeenth day of trial, the jury was instructed that "[i]t is against federal law to have a controlled substance in your possession with the intent of distributing it" before the sentencing court defined the offense's elements as: "First, that the defendant possessed a controlled substance as charged in each count, that is . . . [cocaine base for] Count Four. . . . Second, that [the defendant] did so with a specific intent to distribute the controlled substance over which he had actual or constructive possession[, and] third, that [the defendant] did so knowingly and intentionally."

These instructions also comported with our case law at the time of both the indictment and the conviction. For, even at the time of Ayala's sentencing, we had not held that, statutorily, the drug quantity was an element of a § 841 offense rather than

- 18 -

merely a means of committing it.  See United States v. Douglas, 644 F.3d 39, 40 n.1 (1st Cir. 2011); but see Terry, 593 U.S. at 493-94 (stating that, both pre- and post-Fair Sentencing Act, § 841 sets forth three distinct cocaine-base offenses that are defined in lockstep based on drug quantity).

Ayala, however, at no point addresses any of the features of the record described above that call into question his premise that, even though the jury checked the 280-grams-or-more line on the special verdict form, the offense of conviction was the 28-grams-or-more offense.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").  Thus, we conclude that we must reject Ayala's challenge to the District Court's ruling that his Count IV-related sentence was imposed "in accordance with" the amendments made by the Fair Sentencing Act.  For, as we have explained, his life sentence for his conviction on Count IV was "in accordance with" the relevant provisions of the Fair Sentencing Act insofar as he was convicted of the 280-grams-or-more offense, and Ayala has failed to meet his burden to show that he was not convicted of that offense.

**B.**

Ayala's challenge as it relates to the life sentence that was imposed for his conviction on Count I fails, too -- and

- 19 -

largely for the same reasons. Here, again, Ayala rests the challenge on the offense of conviction having as an element a quantity less than 280 grams or more of cocaine base. But once again we are not persuaded.

The judgment of conviction again undermines the notion that the charge and resultant conviction on Count I were for an offense of which an element was that the defendant conspired to possess with intent to distribute 50 grams or more of cocaine base. With respect to the conviction on Count I, the judgment describes the nature of the offense as a "[c]onspiracy to possess with intent to distribute narcotics" and lists the relevant statutory provision as being "21 USC 841(a)(1)." The judgment of conviction neither identifies a drug quantity nor references the portion of the statute, § 841(b), that does refer to drug quantity. And again, the judgment was entered after the sentencing court had considered, and Ayala did not relevantly object to, the PSR, which stated in relevant part that Ayala had been "found guilty of conspiring to possess with intent to distribute . . . two hundred and eighty (280) grams or more of cocaine base."

As with Count IV, a review of the other relevant features of the record buttresses the conclusion that Ayala was not convicted of the 50-grams-or-more offense.

Count I of the second superseding indictment charged Ayala with "knowingly and intentionally . . . conspir[ing]

- 20 -

. . . to knowingly and intentionally possess with intent to distribute and distribute controlled substances, to wit . . . in excess of fifty (50) grams of cocaine base . . . within one thousand (1,000) feet" of a public housing project. Yet, Count I is similar to Count IV in that, in setting out the elements of the offense, it relevantly lists only § 841(a) without mention of § 841(b). The jury instructions as to this count, moreover, stated that "[s]ection 846 makes it a separate Federal crime or offense for anyone to conspire to . . . violate Section 841 of Title[] 21. Section 841 makes it a crime for anyone to knowingly possess with the intent to distribute, that is to transfer controlled substances to another person," and as stated above, the jury instructions disclaimed that the quantities set forth in the indictment were elements of the offense being charged. In instructing the jury, moreover, the trial judge listed the elements the government had to prove for the conspiracy offense without mentioning drug quantity.

Here, too, Ayala does not address these features of the record. Nor does he explain why, in light of them, the jury's beyond-a-reasonable-doubt finding that the quantity of cocaine base "[Ayala] conspired to possess with intent to distribute" was 280 grams or more does not suffice to demonstrate that the offense of conviction on Count I was, as the government contends, a multidrug-conspiracy offense of which one of the elements was that

- 21 -

the conspiracy be to possess with intent to distribute 280 grams or more of cocaine base. See Zannino, 895 F.2d at 17. So, we once again see no basis for concluding that Ayala has met his burden of showing that the cocaine-base element of his offense of conviction was defined as 50 grams or more, rather than 280 grams or more. Accordingly, we see no basis for crediting Ayala's contention that his Count I-related sentence was not "in accordance with" sections 2 and 3 of the Fair Sentencing Act.[5]

### III.

We now turn to Ayala's challenge to the District Court's ruling denying him relief under 18 U.S.C. § 3582(c)(1)(A). That statute, commonly referred to as the compassionate-release statute, United States v. Saccoccia, 10 F.4th 1, 3 (1st Cir. 2021), authorizes a court upon motion by an incarcerated individual who has exhausted her administrative remedies "to reduce a term of imprisonment when extraordinary and compelling reasons warrant

---

[5] Ayala alternatively contends that, if his offenses of conviction are treated as having had 280 grams or more of cocaine base as elements, those convictions were unconstitutional under Alleyne v. United States, 570 U.S. 99, 108-10 (2013), given that drug-quantity is an element of the offenses to which the higher penalty ranges under § 841 are tied, see Terry, 593 U.S. at 492-93, because that drug quantity was not charged in the terms of the indictment as an element of the relevant offenses for which Ayala was charged. We express no opinion as to the merits of that contention because Ayala makes no argument that, in consequence of Alleyne, his life sentence was not "in accordance with" the amendments made by sections 2 and 3 of the Fair Sentencing Act even if those offenses were in fact his offenses of conviction.

- 22 -

such a reduction," United States v. Ruvalcaba, 26 F.4th 14, 18 (1st Cir. 2022) (internal quotations omitted), and when the sentencing factors set forth in 18 U.S.C. § 3553(a) counsel in favor of such a reduction, see 18 U.S.C. § 3582(c)(1)(A); United States v. Texeira-Nieves, 23 F.4th 48, 52-53 (1st Cir. 2022).

Our review is for abuse of discretion. Saccoccia, 10 F.4th at 4-5. Under this standard, we review embedded questions of law de novo and embedded factual findings for clear error. Ruvalcaba, 26 F.4th at 19. A district court abuses its discretion when it commits a "material error of law." United States v. Sepúlveda-Hernández, 752 F.3d 22, 33 (1st Cir. 2014).

**A.**

The District Court first concluded that Ayala had failed to establish "extraordinary and compelling circumstances" to warrant the requested relief, in part by explaining that Ayala's medical circumstances were not among those identified in the Sentencing Commission's Policy Statement, set forth in U.S.S.G. § 1B1.13. The Policy Statement provides that only certain medical conditions -- such as a terminal illness, a condition that causes serious functional impairment, or a medical condition that requires specialized care that is not being provided -- constitute extraordinary and compelling circumstances. See U.S.S.G. § 1B1.13(b)(1).

The District Court thereafter concluded that, considering the § 3553(a) sentencing factors, Ayala was not entitled to relief under § 3582 because "[Ayala] is a danger to other persons and the community" based on his criminal record. The District Court, in so ruling, noted our observation in Ayala-Vazquez, 751 F.3d at 35, that the size and scope of the drug-trafficking operation of which Ayala had been the ringleader "[were] enough to take one's breath away" and that the operation's "human toll" was "unknowable."

**B.**

Ayala first challenges the District Court's reliance on U.S.S.G. § 1B1.13 in concluding that he did "not meet the medical requirements for compassionate release set forth" in the Policy Statement. The government concedes that, given our decision in Ruvalcaba, the District Court erred insofar as it held that Ayala was not entitled to relief under § 3582 simply because he had not shown that he suffered from a medical condition identified in the Policy Statement. After all, as the government recognizes, we held in Ruvalcaba that, when the motion for compassionate release is brought by the defendant herself, the defendant may be able to show that there are "extraordinary and compelling reasons" that warrant relief apart from those reasons identified in the Policy Statement. See 26 F.4th at 21-23.

- 24 -

Nonetheless, the government contends that any error in relying on the Policy Statement was harmless because the District Court separately concluded that, upon consideration of the § 3553(a) factors, Ayala was not entitled to relief because of the danger that he posed. And, as Texeira-Nieves makes plain, a defendant who can show that there are extraordinary and compelling circumstances warranting a reduced sentence in her case may still be denied a reduction under § 3582(c) "solely on the basis of [the district court's] supportable determination that the section 3553(a) factors weigh against the granting of such relief," 23 F.4th at 55.

Ayala does not dispute that, to succeed on his challenge, he must show that the District Court erred in weighing the § 3553(a) factors insofar as the District Court independently denied him relief based on that weighing. But Ayala contends both that the District Court did not independently base its denial of his motion on a weighing of the § 3553(a) factors and that, in any event, the District Court erred insofar as it did weigh those factors. We see no merit to either contention.

**1.**

Insofar as Ayala argues that the District Court based its conclusions solely on the requirement in U.S.S.G. § 1B1.13(a)(2) that a defendant not be a "danger to the safety of any other person or the community" rather than on its own

independent assessment of the § 3553(a) factors and that is reversible error because district courts are "not constrained by the existing policy statement," Ruvalcaba, 26 F.4th at 21; see also, e.g., United States v. Long, 997 F.3d 342, 356, 360-61 (D.C. Cir. 2021) (holding that district courts are not bound by the danger-to-others requirement in the Policy Statement in compassionate-release motions brought by the defendant), we do not agree that the record supports that contention. While the District Court did refer to § 1B1.13 in its discussion of Ayala's medical conditions, the District Court instead cited to § 3553(a) in its subsequent conclusion as to Ayala's dangerousness. Thus, we see no basis for reading the District Court as saying that its ruling on this point was constrained by the Policy Statement where neither the District Court said, nor the record otherwise indicates, that is the case.

To argue otherwise, Ayala invokes the Sixth Circuit's decision in United States v. Sherwood, 986 F.3d 951 (6th Cir. 2021). But, in that case, the Sixth Circuit vacated and remanded an order that, in its entirety, read, "[The defendant] has failed to demonstrate that he is not a danger to the community. Not only was he convicted of possession of child pornography, but he was convicted of transportation as well," on the basis that the district court had impermissibly relied exclusively on § 1B1.13. 986 F.3d at 953-54. Here, however, there is the material

- 26 -

difference that the District Court expressly cited to § 3553(a) for its conclusion that Ayala still posed such a danger. So, aside from not being binding on us, Sherwood provides no support for reading the District Court's order as Ayala would have us do.

**2.**

As for the contention that the District Court erred in its weighing of the § 3553(a) factors, Ayala makes three separate arguments. None persuades us.

Ayala first argues that the fact that his offense conduct involved violence does not categorically bar him from being granted compassionate-release relief. In so contending, Ayala relies on several cases in which a district court granted compassionate-release relief to individuals serving "life sentences for murders." But, insofar as Ayala means to suggest that the District Court denied Ayala's motion based on the application of a categorical rule that § 3582 relief is unavailable to any defendant convicted of a violent offense, the record provides no support for the contention. Rather, the record shows that the District Court considered Ayala's criminal record and concluded that he still posed a danger to other persons and the community, given his specific circumstances. We also see no basis for concluding that exercise of discretion was itself an abuse of discretion. See Fontanillas-Lopez v. Morell Bauzá Cartagena & Dapena, LLC, 832 F.3d 50, 55 (1st Cir. 2016) (rejecting a challenge

under abuse-of-discretion review that "suggest[ed] that we may reverse the district court merely because it could have exercised its 'ample latitude' differently").

Ayala next argues that, because the risks that COVID-19 poses to certain vulnerable incarcerated individuals can render an imposed sentence more severe than was contemplated at the time of sentencing, the District Court erred in not properly considering whether Ayala's sentence was "sufficient[] but not greater than necessary" to meet the purposes of sentencing, 18 U.S.C. § 3553(a), by failing to account for the risks COVID-19 poses to him. But the record shows that the District Court did consider the particulars of Ayala's health that assertedly rendered him vulnerable to COVID-19, and the District Court determined that Ayala's hypertension and obesity were being adequately treated by the Bureau of Prisons, that Ayala had received vaccinations to protect against COVID-19, and that the COVID-19 protocols of the facility in which Ayala was incarcerated were appropriately functioning. We therefore understand the District Court to have implicitly concluded that whatever vulnerability to COVID-19 existed in Ayala's circumstances did not render the carceral term so much harsher that the sentence became "greater than necessary" to meet the purposes of sentencing. 18 U.S.C. § 3553(a).

Ayala's final contention is that the District Court did not adequately consider the mitigating circumstances in his

case -- which he contends are his age, family support, lack of post-sentencing disciplinary infractions, and post-conviction rehabilitation -- when weighing the § 3553(a) factors. It is true that the District Court did not explicitly discuss these factors. But, as Ayala brought these factors to the District Court's attention in his motion, we see no basis for concluding that the District Court ignored them in determining that other § 3553(a) factors militated against granting the requested release. See United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012) ("Though we require consideration of the § 3553(a) factors, we do not require an express weighing of mitigating and aggravating factors or that each factor be individually mentioned."); United States v. Cortés-Medina, 819 F.3d 566, 571 (1st Cir. 2016) ("[W]e discern no abuse of discretion in the sentencing court's failure to acknowledge explicitly that it had mulled the defendant's arguments.")

**IV.**

For the reasons given, the judgment of the District Court is **affirmed**.